**Charles J. RANDALL,**
**Plaintiff-Appellant,**

v.

**ARABIAN AMERICAN OIL COMPANY,**
**Defendant-Appellee.**

No. 84–2701.

United States Court of Appeals,
Fifth Circuit.

Dec. 26, 1985.
Rehearing and Rehearing En Banc
Denied Jan. 27, 1986.

Jeffery H. Krasnow, Roanoke, Va., Hicks, Glover, Robinson & Sheiness, Iris Hefter Robinson, Houston, Tex., for plaintiff-appellant.

Bracewell & Patterson, Victoria Corcoran, V. Scott Kneese, Houston, Tex., for defendant-appellee.

Before GARZA, TATE and JOHNSON, Circuit Judges.

GARZA, Circuit Judge.

This diversity action was filed by Charles J. Randall ("Randall") against his former employer, the Arabian American Oil Company ("ARAMCO"), for wrongful discharge of employment. The district court entered judgment for ARAMCO based on it's motion for summary judgment, which alleged that under the applicable law of Saudi Arabia, this dispute could be heard only by the Saudi Labor Commission. We disagree with the district court's ruling that Randall's remedy must be enforced through the Saudi Arabian tribunal. Although there is no question that Saudi Arabian

substantive law provides the rule of decision in this case, we see no reason why Randall's claim cannot be adjudicated in our federal courts if subject matter and in personam jurisdiction exist. We find that ARAMCO's motion for summary judgment was improperly granted. Accordingly, we reverse and remand.

## FACTS

In the fall of 1973, Randall interviewed with ARAMCO in Houston, Texas, for a position of employment in Saudi Arabia. ARAMCO interviewed him a second time in New York City, and he accepted employment in May 1974. Randall was hired as a Maintenance Engineer III and he lived and worked in Dharan, Saudi Arabia until his termination on August 31, 1981. ARAMCO purportedly fired Randall for diverting certain company goods, as well as services of employees under his supervision, to his own use and benefit. Randall received a notice of termination on August 22, 1981, effective August 31, 1981.

After receiving the notice of termination, Randall began investigating his right to contest the termination. He obtained a copy of the company's "Internal Rules ("Rules") and a copy of the Labor and Workmen Law (Kingdom of Saudi Arabia) ("Labor Law"). It appears that Randall could have challenged his termination by using either an internal grievance procedure under the Rules or by a formal complaint to the Labor and Settlement of Disputes Commissions ("Labor Commission") created under the Labor Law.[1]

Randall alleges, however, that ARAMCO kept him from pursuing his complaint in Saudi Arabia. He received an anonymous telephone call at his home suggesting that he should not pursue his complaint because he and his family could get in trouble with

the government and possibly be put in jail. Also, Randall alleges that an ARAMCO employee, who was involved in an investigation of Randall's misconduct, had warned Randall that if he embarrassed the company he could "end up in big trouble." It is not clear whether these, and other, alleged threats actually kept Randall from pursuing his claims in Saudi Arabia. But thinking that he could seek relief in an American court, and fearing for his safety and that of his family, Randall returned to the United States where he filed this diversity action on August 30, 1982.

## PROCEDURAL HISTORY

Randall is a citizen of Virginia and ARAMCO is a Delaware corporation with its principal place of business in Houston, Texas. Randall alleges that his termination was wrongful and that under the Labor Law he suffered damages in excess of $10,000. More specifically, Randall claims that he was (1) not guilty of the alleged misconduct ARAMCO charged him with, (2) never made aware of his rights under the Labor Law, as required by the Labor Law, (3) terminated in violation of the procedural rights granted to employees under the Labor Law, (4) kept from pursuing challenges to his termination in Saudi Arabia, (5) wrongfully denied his termination award in the amount of $27,924.04 and back pay in the amount of $4,850.00, and (6) denied indemnity pursuant to the Labor Law in the amount of $29,100.00.

ARAMCO initially filed a motion to dismiss on the grounds that (1) the Labor Law gave exclusive jurisdiction for the settlement of labor disputes to a Labor Commission created by the Labor Law,[2] (2) that because of the exclusive jurisdiction provisions of the Labor Law, Randall's claim failed to state a claim upon which relief

1. Article 172 of the Labor Law provides:
 The Labor and Settlement of Disputes Commissions shall be as follows:
 a. The Primary Commissions for Settlement of Disputes.
 b. The Supreme Commissions for Settlement of Disputes.

2. The pertinent provisions of the Labor Law provide:

*Article 174*
 The Primary Commission for Settlement of Disputes shall have *exclusive jurisdiction* to:
 First: Render final decisions on:

 b. Disputes relating to the stay of execution of decisions to terminate workmen, which are filed in accordance with the provisions of this law.

could be granted, and (3) that the claim was barred by the one-year statute of limitations of the Labor Law.[3] Since the parties had asked the court to consider the employment contract, the Rules, and the Labor Law, the court appropriately considered the motion to dismiss as a motion for summary judgment. *See Oaxaca v. Roscoe*, 641 F.2d 386, 391–92 (5th Cir.1981) (a Rule 12(b)(6) motion may be converted by the court into a motion for summary judgment).

A hearing was set for argument and testimony on the issues of the exclusive jurisdiction provisions of the Labor Commission and the plaintiff's awareness of his rights under the Labor Law. This hearing never occurred. In his brief, Randall states that ARAMCO notified the district court and opposing counsel that it was withdrawing the issue of jurisdiction from consideration. The record is silent about this, except for an order by the district court denying ARAMCO's motion to dismiss. Almost one year later, after further discovery by the parties, ARAMCO filed a motion for summary judgment asserting as its sole ground for relief the exclusive jurisdiction provisions of the Labor Law. In granting judgment for ARAMCO, the district court gave effect to the exclusive jurisdiction provisions of the Labor Law and ruled that the Labor Commission was the only forum in which Randall could file an action against ARAMCO.

On appeal, Randall argues (1) that the exclusive jurisdiction provisions of the Labor Law are procedural in nature and that under conflict of laws principles the court may use Texas procedures and remedies to enforce his rights against ARAMCO using Saudi Arabian substantive law, (2) that a United States citizen should not, as a matter of public policy, be forced to seek relief before a foreign tribunal, and (3) that ARAMCO should be equitably estopped from asserting the exclusive jurisdiction provisions of the Labor Law because it prevented him from using the Saudi Arabian tribunals by frightening him out of the country.

ARAMCO counterargues that the exclusive jurisdiction provisions of the Labor Law are an integral part of any rights Randall may have under the Labor Law and cannot be ignored in determining whether Randall may use an alternative forum to enforce his rights, if any. Further, the Act of State Doctrine and the doctrine of international comity compel the district court to recognize the Labor Commission's exclusive authority over this dispute, thereby depriving any other forum of authority to adjudicate.

## I. The Court's Jurisdiction Over The Subject Matter and The Parties

 Our analysis and disposition of this appeal will be easier to follow if we begin

---

Second: Render decisions of first instance on:

 c. Disputes pertaining to termination service.

*Article 176*

The Supreme Commission shall have *exclusive jurisdiction* to render final and definitive decisions in all disputes referred to it on appeal and shall likewise be competent to impose upon the violators of the provisions of this Law the penalties prescribed herein.

*Article 179*

Each of these Commissions shall have *exclusive right* to examine all disputes relating to labor contracts, and may summon any person for interrogation or assign one of its members to conduct such interrogation. It may also require the presentation of documents or evidence and adopt any other measure it may deem fit. The Commission shall

also have the right of access to any premises occupied by the establishment, for the purpose of conducting the required investigation in accordance with the provisions of this law. (emphasis added).

**3.** Article 13 of the Labor Law provides:

No complaint shall be heard by any Commission in respect of violations of the provisions of this Law or of the rules, decisions or orders issued in accordance therewith, after the lapse of twelve months from the date of the occurrence of such violation. No case or claim relating to any of the rights provided for in this Law shall be heard after the lapse of twelve months from the date of termination of the contract. Also, no action or claim relating to any of the rights provided for in any previous regulations shall be heard after the lapse of one full year from the effective date of this Law.

with the district court's subject matter jurisdiction and the effect, if any, of the Saudi Arabian exclusive jurisdiction provisions on the courts of this country. ARAMCO contends that the exclusive jurisdiction provisions of the Saudi Arabian Labor Law deprived the United States District Court of subject matter jurisdiction. We disagree. The district court had subject matter jurisdiction of this dispute by virtue of the diverse citizenship of the parties and the claim for damages in excess of $10,000. Moreover, the parties do not dispute that the court had in personam jurisdiction over the defendant.

■ The exclusive jurisdiction provisions of the Labor Law cannot deprive a United States District Court of subject matter jurisdiction. The geopolitical outreach of a foreign country's legislative jurisdiction normally does not extend beyond its borders, and the effect of a foreign sovereign's laws in another country depends on the recognition the other country chooses to give it either through notions of comity and reciprocity or through a formal agreement or treaty between sovereigns. We reject outright the notion that the law of a foreign country can unilaterally curtail the power of our federal courts to hear a dispute even though the dispute involves rights fixed by the laws of another nation. Only the Constitution and the laws of the United States can dictate what cases or controversies our federal courts may hear, and the parties have not directed our attention to any treaties or agreements with Saudi Arabia that would require our courts to refrain from exercising jurisdiction in this case.

## II. *The Choice of Law*

The issue of whether our courts have subject matter jurisdiction is readily distinguishable from the issue of what law governs this dispute. The district court's diversity jurisdiction directs us to the law of the forum state as the rule of decision, *Erie Railroad v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including the conflict of laws rules of that state. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The State of Texas requires that "in all choice of law cases, except those contract cases in which the parties have agreed to a valid choice of law clause, the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue," *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984), unless application of the law referred to "violates good morals, natural justice or is prejudicial to the general interests of our own citizens." *Gutierrez v. Collins*, 583 S.W.2d 312, 321 (Tex.1979).

■ ARAMCO argues that Randall's cause of action is against Texas' public policy because Texas is an employment-at-will state that allows for the dismissal of an employee for any cause or for no cause at all. Conversely, ARAMCO contends that enforcement of the exclusive jurisdiction provisions of the Labor Law does not violate Texas public policy. We disagree with this strained logic.

Enforcement of this action by a federal court sitting in diversity does not violate the good morals or natural justice of the State of Texas nor would it be prejudicial to the general interests of its citizens. Texas may be an employment-at-will state, but we note too that Texas has adopted two comprehensive labor schemes of its own: the Texas Worker's Compensation Act and the Texas Unemployment Compensation Act.

The parties do not dispute that Saudi Arabian law provides the rule of decision.[4]

---

**4.** The determination of foreign law is governed by Fed.R.Civ.P. 44.1. Rule 44.1 provides:

A party who intends to raise an issue concerning the law of a foreign country shall give notice in his pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

Almost from the time he was hired, Randall lived and worked in Saudi Arabia. He resided there for over seven years as an ARAMCO employee. The issue before us is whether in adopting Saudi law as the rule of decision (pursuant to Texas conflicts law) we must accept the exclusive jurisdiction provision as part of the substantive law to be applied.

### III. *"Full Faith and Credit" of Foreign Law*

■ Randall's complaint alleges a classic example of a transitory cause of action [5] that may be enforced in any foreign court having subject matter and in personam jurisdiction. *See* Restatement (Second) of Conflict of Laws § 91 (1971).[6] We are guided in our analysis by a series of cases which, although distinguishable as involving the Full Faith and Credit Clause of the United States Constitution, Art. I, Sec. 4, nonetheless provide the operating principles by which we may decide whether to give recognition to the Saudi Labor Law's exclusive jurisdiction provision.[7]

In *Tennessee Coal, Iron & Railroad Co. v. George* 233 U.S. 354, 34 S.Ct. 587, 58 L.Ed. 997 (1914), the United States Supreme Court decided the question of whether the Full Faith and Credit Clause prohib-

ited the courts of Georgia from enforcing an employee's cause of action under the Alabama Code against his employer when another section of the Alabama Code provided that suits to enforce liability under the Code "must be brought in a court of competent jurisdiction within the State of Alabama *and not elsewhere."* 233 U.S. at 359, 34 S.Ct. at 588 (emphasis in text).

The Court noted that there are cases where "the right and the remedy are so united that the right cannot be enforced except in the manner and before the tribunal designated by the act." *Id.* But it held that, at least under the facts and the law of this case, "venue is no part of the right; and a State cannot create a transitory cause of action and at the same time destroy the right to sue on that transitory cause of action in any court having jurisdiction." *Id.* at 360, 34 S.Ct. at 589. The Court also reasoned that the

[defendant] may have removed from the State [of Alabama] and it would be a deprivation of a fixed right if the plaintiff could not sue the defendant in Alabama because he had left the State nor sue him where the defendant or his property could be found because the statute that action on the particular claim shall not be brought outside its territory.

Prior to Rule 44.1, we accepted the common law classification of foreign law as an issue of fact, but the determination and interpretation of foreign law was, as a practical matter, reserved for the judge. Moreover, the clearly erroneous standard applicable to review of fact findings was often ignored by appellate courts. *See First National City Bank v. Compania de Aguaceros, S.A.,* 398 F.2d 779, 781–82 (5th Cir.1968). Our recognition of foreign law as law, rather than as fact, allows us to review the district court's interpretation and application of such law and the rights and duties bestowed upon the parties.

5. For an overview of what constitutes a "transitory" versus a "local" action *see Minichiello v. Realty Assoc., Inc. v. Britt,* 460 F.Supp. 896 (D.N. J.1978), *aff'd,* 605 F.2d 1196 (3d Cir.1979). There is no question that Randall's action is transitory.

6. Section 91 of the Restatement (Second) of Conflict of Laws provides:

*Attempted Localization of Action*
A State may entertain an action even though the state of the applicable law has provided

that action on the particular claim shall not be brought outside its territory.

7. *Atchison, Topeka & Santa Fe Railway v. Sowers,* 213 U.S. 55, 29 S.Ct. 397, 53 L.Ed. 695 (1909); *Tennessee Coal, Iron & Railroad Co. v. George,* 233 U.S. 354, 34 S.Ct. 587, 58 L.Ed. 997 (1914); *Bradford Electric Light Co. v. Clapper,* 286 U.S. 145, 52 S.Ct. 571, 76 L.Ed. 1026 (1932); *Alaska Packers Assn. v. Industrial Accident Commission,* 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935); *Pacific Employers Insurance Co. v. Industrial Accident Commission,* 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939); *Hughes v. Fetter,* 341 U.S. 609, 71 S.Ct. 980, 95 L.Ed. 2323 (1952); *Carroll v. Lanza,* 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955); *Lauritzen v. Larson,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Crider v. Zurich Insurance Co.,* 380 U.S. 39, 85 S.Ct. 769, 13 L.Ed.2d 641 (1965); and *Thomas v. Washington Gas Light Co.,* 448 U.S. 261, 100 S.Ct. 2647, 65 L.Ed.2d 757 (1980). Most of these cases involve conflicts between the worker's compensation acts of different states and awards granted under these acts.

did not permit a suit elsewhere than in Alabama.

*Id.* at 359, 34 S.Ct. at 588.

Fifty-one years later, in *Crider v. Zurich Insurance Company,* 380 U.S. 39, 85 S.Ct. 769, 13 L.Ed.2d 641 (1965), the United States Supreme Court held that it did not violate the Full Faith and Credit Clause for an Alabama state court to exercise jurisdiction and award damages under the worker's compensation act of the State of Georgia notwithstanding language in the statute purporting to provide an exclusive remedy which only the Georgia Compensation Board could award. The Court employed an interest analysis, an approach hinted at in cases such as *Alaska Packers Assn. v. Industrial Accident Commission,* 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935), *Pacific Employers Insurance Co. v. Industrial Accident Commission,* 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939), and *Carroll v. Lanza,* 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955), to reach the conclusion that the plaintiff could bring this action in Alabama.

The cause of action in the Alabama state court was based on an injury to an Alabama resident while he was working in Alabama. The plaintiff was employed in Alabama by Lawler Construction Company, Inc. and both parties were covered by the Georgia Worker's Compensation Act at the time. *Crider,* 380 U.S. at 39–40, 85 S.Ct. at 769–70. *Crider* held that the State of Alabama could, consistent with Due Process and Full Faith and Credit notions, adopt and enforce the remedy provided by Georgia law without referring the plaintiff back to a Georgia forum. 380 U.S. at 42–43, 85 S.Ct. at 770–71.

We have isolated two good reasons, which taken either separately or together, support our ruling in this case. First, the Saudi exclusive jurisdiction provision can fairly be characterized as procedural in nature and not part of the substantive Labor Law that Texas conflicts principles direct us to apply.[8] In a diversity case such as this one, a federal court must apply state substantive law (including its conflict of laws rules) to the merits of the case but it employs proper federal procedural standards. *Falcon v. Autobuses Internacionales,* 418 F.2d 673, 676 (5th Cir.1969). Further, it is left to the law of the forum to determine whether a law is substantive or procedural.[9] *Rosales v. Honda Motor Co.,*

---

**8.** We note as well that even the Labor Law makes allowances for the arbitration of labor disputes in lieu of the Commission.

Article 183 provides:

In all cases, the parties to a dispute may by mutual agreement appoint one arbitrator for both of them, or one or more arbitrators for each party so that the arbitrator or arbitrators may settle the dispute in lieu of the Commissions provided for in this Chapter.

Where the arbitrators fail to select an umpire, the chairman of the Primary Commission in whose circumscription the place of work is located shall appoint the said umpire, if such an umpire has not already been appointed in the arbitration agreement. The arbitration agreement shall indicate the time-limits and the rules of procedure to be followed in order to settle the dispute. The arbitrators' award shall be of first instance and appealable before the Supreme Commission within the time-limits, time-extensions and the rules of procedure prescribed for the appeal of decisions before the said Commission, unless the arbitration agreement expressly provides that the arbitrators' award shall be definitive, in which case such award shall be irrevocable.

A copy of the arbitration agreement shall be deposited with the Office of the appropriate Primary Commission in the area, and the arbitrators' award shall be registered with the Office of the said Commission within one week of its rendering.

**9.** We note that an *Erie* problem lurks in the shadows of this issue. Since this suit was brought under the court's diversity jurisdiction, we are bound to apply the substantive law of the state in which the district court sits. The substantive/procedure distinction, however, has often proved difficult to analyze. *See Byrd v. Blue Ridge Electric Co-op, Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

The issue that begs our attention is whether in referring us to foreign law via *Duncan v. Cessna, supra* (Texas conflicts law), we must follow foreign procedural rules that would affect the outcome of the litigation. In *Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), the United States Supreme Court held that "[t]he 'outcome-determination' test ... cannot be read without reference to the twin aims of the Erie

*Ltd.*, 726 F.2d 259 (5th Cir.1984); *Scharf v. Cameron Offshore Services*, 475 F.Supp. 48, 50 (W.D.La.1979); *Federal Insurance Co. v. Nationwide Mutual Insurance Co.*, 448 F.Supp. 723, 725 (W.D.Va.1978).

■ Second, we find that the United States has an interest in providing a forum to its citizens especially when as here, Randall alleges that he was kept by ARAMCO from using the forum available to him in Saudi Arabia. ARAMCO contends that Saudi Arabia has an interest in keeping its labor disputes within the country and that providing a foreign forum to a disgruntled litigant will result in inconsistent interpretations of the Labor Law. We do not deny the validity of Saudi Arabia's interests. But we find paramount our interest in providing a forum to a United States citizen seeking to sue a United States corporation on a employment contract negotiated and made in the United States. In any event, our forum provides due regard for the interests of Saudi Arabia by using the substantive Labor Law as the rule of decision.

Finally, it stands to reason that if the Full Faith and Credit Clause of the United States Constitution, which is the Supreme Law of the land, does not compel one state from recognizing the exclusive jurisdiction provisions of a sister state, then we see little or no reason why in a transnational case such as this, where no higher positive law binds us, we should be compelled to give effect to a foreign state's exclusive jurisdiction provision.

ARAMCO contends that the Act of State Doctrine precludes us from not giving effect to the exclusive jurisdiction provision because that doctrine precludes courts of the United States from examining the validity of the public or governmental acts of a foreign sovereign. The Act of State Doctrine may function at the intersovereign level somewhat like the Full Faith and Credit Clause functions at our national level, but it does not apply here nor does it compel our enforcement of the Saudi Arabian exclusive jurisdiction provision.

■ Although often referred to as an international law doctrine, the Act of State Doctrine has "constitutional" underpinnings. *See Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 423, 84 S.Ct. 923, 937–38, 11 L.Ed.2d 804 (1964). The concerns raised by *Sabbatino* regarding judicial interference with diplomatic relations are not at all implicated in this case. By refusing to enforce the exclusive jurisdiction provision of the Labor Law we are not judging the validity of that provision within the territorial sovereignty of Saudi Arabia in violation of the Act of State Doctrine. We are simply refusing to give that provision effect within our country and our courts.

## CONCLUSION

Our holding does not guarantee that Randall will win his case. If ARAMCO justifiably discharged Randall in Saudi Arabia, it should be able to show that just as easily in our court as it could have shown that before the Saudi Labor Commission.

Accordingly, we reverse and remand for proceedings consistent with this opinion.[10]

REVERSED AND REMANDED.

rule: discouragement of forum shopping and avoidance of inequitable administration of the laws." *380 U.S. at 468, 85 S.Ct. at 1142.*
Our question presents a false issue. Randall could have brought this action in state court, in federal court, or before a Saudi Arabian Labor Commission. ARAMCO contends that allowing this suit to proceed in the United States will lead to forum shopping by disgruntled employees, such as Randall, and to the inconsistent interpretation and application of the Labor Law. But the result of this litigation is not controlled by procedural variances in the different forums in the sense that *Erie* and its progeny sought to remedy. To the argument that the outcome of the litigation may be different from one forum to another, we can only say that this would be true of the decisions of one particular panel of the Saudi Labor Commission as opposed to another. We cannot guarantee machine-like uniformity of decisions of different judicial panels composed of different judges. If that was a legally operative factor in our analysis, any choice of forum would be "outcome-determinative."

**10.** ARAMCO had asserted the one-year statute of limitations as a bar to this action in its motion to dismiss. That motion, which the district court treated as a motion for summary judg-

ment, was denied by order of the court. At oral argument, counsel for ARAMCO raised the limitations issue once again claiming that Randall had not filed this lawsuit within the proper time period. Although Randall was notified of his termination on August 22, 1981, it did not become effective until August 31, 1981. This lawsuit was filed on August 30, 1982. Counsel for Randall stated that the limitations issue had been decided favorably for Randall when the district court denied ARAMCO's motion to dismiss. But counsel for ARAMCO asserted that the limitations issue remained unsettled and argued that the calendar period referred to in the Labor Law and in Randall's employment contract was based on the Hijrah calendar year, which is shorter than our calendar year. Whatever the merits of this argument, this appeal involves only the district court's grant of ARAMCO's motion for summary judgment, which was based solely on the exclusive jurisdiction provisions of the Labor Law. The limitations issue is not before us and we must assume that the district court ruled in favor of Randall on this point when it denied ARAMCO's motion to dismiss.