**PEREZ & COMPANIA (CATALUNA), S.A., Plaintiff-Appellee Cross-Appellant,**

v.

**M/V MEXICO I, Etc., Defendant,**

**and**

**Triton Pacific Maritime Corporation, Defendant-Appellant Cross-Appellee.**

No. 86–2784.

United States Court of Appeals, Fifth Circuit.

Sept. 18, 1987.

Mark J. Airola, Gus Schill, Royston, Rayzor, Vickery & Williams, Houston, Tex., for plaintiff-appellee cross-appellant.

Robert J. Ryniker, Houston, Tex., for defendant-appellant cross-appellee.

Before RUBIN, GARZA, and JONES, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

In an *in rem* action arising out of nonpayment for fuel supplied in Spain and used on a maritime voyage from Spain to the United States, the district court held that Spanish law does not recognize an *in rem* claim against a vessel and allowed the plaintiff to amend its complaint to state an *in personam* claim against the vessel owner. Subsequently, the district court granted the defendant's motion to dismiss the suit on the basis of forum non conveniens, on the condition that a letter of undertaking provided by the vessel owner continue to stand as security for the action when reinstituted in Spanish courts, 647 F.Supp. 556. We affirm the decision that Spanish law does not allow an *in rem* cause of

action, but hold that the letter of undertaking by its terms precludes its application as security for the *in personam* claim. We therefore remand the case to the district court for reconsideration of its dismissal on the basis of forum non conveniens.

### I.

Perez & Compania (Cataluna), S.A. brought an *in rem* action against the M/V MEXICO I when it docked at the Port of Houston, alleging that Perez had paid for fuel used by the vessel on its voyage from Spain to Houston, but had not been repaid the amount due it, $25,000. The vessel had been chartered from its owner, Triton Pacific Maritime Corporation (Triton), by Pacific Caribbean Shipping (U.S.A.), Inc. The charterer had ordered fuel from Perez, and Perez had, in turn, contracted with a fuel dealer, Enpetrol, which supplied the fuel in Pasajes, Spain. When the charterer failed to pay for the fuel, Perez paid for it pursuant to its guarantee.

When Triton learned that the vessel would be seized pursuant to Supplemental Admiralty Rule C, which governs *in rem* actions, its underwriter, to prevent a delay in the vessel's departure, arranged with Perez to provide a letter of undertaking to stand as security for the vessel. The letter of undertaking stated:

> In the event final decree (after appeal, if any) be entered in favour of the plaintiff against the M/V "Mexico 1" in rem, then the undersigned Association agrees to pay and to satisfy up to and not exceeding the amount of USD 25,000.00, the said final decree or any lesser amount decreed by the court or settled between the parties. . . .

Triton subsequently filed its claim to ownership of the vessel and requested dismissal of the suit on the ground that Spanish law, which the parties have stipulated to be applicable, recognizes no *in rem* rights against a vessel. The district court granted the dismissal but allowed Perez to amend its complaint to state an *in personam* cause of action against Triton as the

vessel owner. In response to the amended complaint, Triton filed a motion to cancel the security agreement, asserting that it was limited by its terms to proceedings *in rem*. Triton also moved to dismiss the litigation on the basis of forum non conveniens so that the suit could again be filed in Spain. The district court granted the motion to dismiss, but refused to cancel the letter of undertaking, stating that it would construe the letter "in light of the instrument as a whole" and consider the tenor of the whole agreement and the surrounding circumstances. The court read the letter, thus construed, as "an agreement by which the underwriter's intent, on behalf of the owner, Triton, is to promise to pay Plaintiff up to $25,000 in the event of a finding of liability against the Defendant." Because Spanish law permits attachment of a vessel even though it is not subject to an *in rem* proceeding, the court read the letter as security "for that eventuality."

Both parties appeal the judgment of the district court. Triton asserts that the letter of undertaking cannot stand as security for the *in personam* action, and Perez asserts both that the district court erred in determining that Spanish law recognizes no *in rem* action, and that the district court abused its discretion in dismissing the suit on the basis of forum non conveniens.

### II.

The parties agreed in the trial court that Spanish substantive law governs the existence and nature of Perez's rights against the vessel. Although the district court's determination of foreign law is a question of fact at trial, it is treated on appeal as a ruling on a question of law subject to *de novo* review.[1]

The issue to be resolved under Spanish law is not whether Perez was entitled to seize the vessel as security for a claim against the vessel owner, but whether Perez was entitled to sue the vessel, *in rem*, as a separate entity. As we said in *Belcher Co. of Alabama, Inc. v. M/V Maratha*

---

**1.** Fed.R.Civ.P. 44.1; *First Nat'l City Bank v. Compania de Aguaceros, S.A.,* 398 F.2d 779, 781–82 (5th Cir.1968); *see also Randall v. Arabian Am. Oil Co.,* 778 F.2d 1146, 1150 n. 4 (5th Cir.1985).

*Mariner,* "Attachment does in many respects resemble arrest.... Nevertheless, not only do the issues in the two actions differ; the basic theory on which each is brought is different." [2] *In rem* rights are based on a substantive theory that the vessel itself can be held liable for a debt that creates a maritime lien. We explained in *Belcher:*

> In the *in rem* proceeding the owner bears no personal liability. The vessel is sold solely to satisfy the lien. If the proceeds of the sale are inadequate, there is no liability on the owner's part for the residue. Indeed the admiralty court will not render a personal judgment against the owner in excess of the amount of the release bond. Only a personal action against the owner can establish such liability. In the attachment action, the object of the action is a personal judgment for the full sum due.... If the proceeds of sale of the vessel do not satisfy the judgment, the owner remains liable for the balance of the debt. [3]

■ Spain does not recognize a right to proceed directly against a vessel. A creditor must file a personal action against the vessel owner or charterer, but may seize the vessel as security for his claim. Spain is a signatory to the Brussels Convention, [4] which provides that, if Perez has a "maritime claim" against a ship owner or time charterer—including claims arising out of fuel supplied to a ship [5]—then Perez may arrest either the particular ship out of which the claim arose or any other ship belonging to the same owner or charterer. [6] The affidavit of Spanish law submitted by Perez is not to the contrary, for it merely explains that the *in personam* claim need not be against the owner of the vessel, but may instead be against another responsible person, such as the time charterer.

Nor is the Fourth Circuit decision in *Gulf & Southern Terminal Corp. v. S.S. President Roxas,* [7] which was cited in *Belcher,* to the contrary. That court concluded that the judicial sale of a vessel in a Mexican bankruptcy action was sufficiently similar in substance to an American *in rem* action to bar a subsequent *in rem* proceeding against the vessel in the United States. The similarities were that the Mexican bankruptcy court sold the vessel free of any other liens, and that the procedures employed in the sale were "virtually identical to those which are denominated as an *in rem* proceeding under American law." [8] The Spanish-law action does not share these similarities with an *in rem* action.

We conclude, as we did in *Belcher,* that the attachment of a vessel in a nation signatory to the Brussels Convention cannot be equated to an *in rem* Rule C seizure in the United States. [9] We therefore affirm the district court's dismissal of the *in rem* complaint.

### III.

■ Because the letter of undertaking is a contract, the district court's interpretation of its provisions as securing both the *in personam* action against Triton and the *in rem* action against the M/V MEXICO I is reviewable on appeal as a question of law.

We find that the express terms of the letter limited its applicability to proceedings *in rem.* As stated previously, it guaranteed payment up to $25,000 in satisfaction of a final decree "against the M/V 'Mexico I' *in rem.*" Perez apparently agreed in the letter to a broader restraint on its conduct than was secured by the underwriter's guarantee, for Perez promised not to "seize arrest or attach the M/V

---

**2.** 724 F.2d 1161, 1165 (5th Cir.1984).

**3.** *Id.* (footnote omitted).

**4.** International Convention Relating to the Arrest of Sea-Going Ships, May 10, 1952, 439 U.N. T.S. 193, *reprinted in* 6A *Benedict on Admiralty* Doc. 8-1 (7th ed. 1987).

**5.** *See* Brussels Convention art. 1, para. (1)(k).

**6.** *See id.* art. 3, para. (1), (4).

**7.** 701 F.2d 1110 (4th Cir.), *cert. denied,* 462 U.S. 1133, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983).

**8.** *Id.* at 1112.

**9.** *See Belcher,* 724 F.2d at 1163–65.

'Mexico I' *or any other property belonging to its owner or in the same beneficial ownership or management,* by reason of the claim [it was] making against the vessel." [10] The considerations given by the two parties negotiating the letter of undertaking, however, need not be coextensive. The only security given by Triton was for payment in the event of a judgment *in rem.* Indeed, the letter also expressly reserves Triton's right to contest whether Perez could proceed *in rem* against the M/V MEXICO I. [11] Perez and Triton bargained for the terms of the letter, and Perez allowed its right to receive payment to be restricted to *in rem* liability. Had Perez been dissatisfied with the language of the letter or any of the limitations it contained, Perez could have rejected the letter and seized the vessel. Because the terms that the parties negotiated include only security for a proceeding *in rem,* we conclude that the letter cannot also stand as security for an *in personam* action. We therefore reverse the district court's decision on this issue and cancel the letter of undertaking.

## IV.

The decision to dismiss a case pursuant to the doctrine of forum non conveniens rests within the sound discretion of the district court, and can be reviewed only for an abuse of discretion. [12] As the Supreme Court established in *Gulf Oil Corp. v. Gilbert,* [13] both public concerns and the private interests of the parties must be considered in determining whether the plaintiff's choice of forum is appropriate. Although a strong presumption exists in favor of the plaintiff's choice of forum, the presumption applies with less force when the plaintiff is foreign. [14] Nonetheless, in order to overcome the presumption, the balance of public and private interests must favor the defendant. [15]

 The district court correctly determined that all public interest factors weigh in favor of dismissal. Because the events leading to the controversy occurred in Spain, Spain has an interest in having the controversy decided there. [16] The sole connection of the controversy with the United States is that the vessel, on an unspecified number of occasions, has carried goods to and from the Port of Houston, and that the complaint was filed upon the arrival of the vessel at that port. As is apparent from the conflicting affidavits filed by the parties, retaining the case would embroil the trial court in "untang[ling] problems in ... law foreign to itself." [17] The doctrine of forum non conveniens was designed in part "to help courts avoid conducting complex exercises in comparative law." [18] Moreover, courts in Houston are severely congested, which indicates that a matter of no local concern should not be tried there; to do so may delay the trial of cases of local concern.

The factors to be considered in evaluating the private interests involved include the relative ease of access to sources of proof, the availability of compulsory process, the cost of obtaining attendance of willing witnesses, the enforceability of a

**10.** Emphasis added.

**11.** The letter of undertaking stated:
This letter is written entirely without prejudice to any rights or defenses which the said vessel or its owners may have, including the right ... to claim that Perez and Compania (Cataluna, S.A.[ ]) has no [in] rem action gainst the M/V "Mexico I" due to there being no lien against the vessel.

**12.** *Bailey v. Dolphin Int'l, Inc.,* 697 F.2d 1268, 1274 (5th Cir.1983).

**13.** 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

**14.** *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981); *Gahr Devs., Inc. of Panama v. Nedlloyd Lijnen, B.V.,* 723 F.2d 1190, 1192 (5th Cir.1984).

**15.** *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. at 843.

**16.** *See Forsyth Int'l (U.K.) Ltd. v. S.S. Penavel,* 630 F.Supp. 61, 63 (S.D.Ga.1985), *aff'd mem.,* 786 F.2d 1180 (11th Cir.1986).

**17.** *Gulf Oil Corp.,* 330 U.S. at 509, 67 S.Ct. at 843.

**18.** *Piper Aircraft Co.,* 454 U.S. at 251, 102 S.Ct. at 263.

judgment if one is obtained, and practical considerations concerning the administration of trial.[19] All parties to this lawsuit are foreign, the contract at issue was negotiated and executed in Spain, and the fuel was supplied to the vessel in Spain. Fact issues remain to be determined—in particular, whether Perez had notice that the charterer lacked authority to bind Triton to the obligation to pay for the fuel. All relevant witnesses and evidence are in Spain or Europe, beyond the compulsory process of United States courts. Although Perez asserts that testimony could be obtained by affidavits, to "fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition[ ] is to create a condition not satisfactory to court, jury or most litigants." [20] Moreover, Triton is required, as a condition of the order of dismissal, to submit to the jurisdiction of the Spanish courts and to waive any applicable statute of limitations defense. Perez has not indicated that it cannot pursue the lawsuit in Spain, and indeed Spanish law would accord Perez the right to secure its claim by seizing the M/V MEXICO I or any other ship belonging to Triton.[21] We conclude that the district court did not abuse its discretion in determining that the balance of public and private interests warrants dismissal of the suit.

The district court did, nevertheless, condition the order of dismissal upon the retention of the letter of undertaking as security for the *in personam* claim in Spanish courts. Absent the letter of undertaking, Perez no longer has any security for its claim in either United States or Spanish courts. Perez contends that, if this suit is transferred to Spain, Triton may prevent all of its vessels from proceeding to port at any location subjecting them to seizure under Spanish law, and that Perez may therefore be unable to obtain satisfaction of an ultimate judgment in its favor. In several previous cases, this court has made dismissal on the basis of forum non conveniens conditional on a formal agreement by the defendant to satisfy any final judgment.[22] Because the district court based its decision to dismiss the action partly on the premise that the letter of undertaking would continue to serve as security for Perez's claim in Spanish courts, it did not consider whether to impose a condition that Triton agree to satisfy any final judgment. We therefore remand this case to the district court so that it may consider whether or not it should add to the order of dismissal a condition that Triton formally agree in the Spanish proceeding to satisfy any final judgment rendered by that court.[23]

In remanding the case, we express no opinion concerning whether or not the district court had personal jurisdiction over Triton and whether or not, if such jurisdiction was wanting, its initial absence has been waived. Those issues were not contested in the district court and were not raised in the parties' arguments or briefs on appeal.

For the above reasons, the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

---

19. *Gulf Oil Corp.,* 330 U.S. at 508, 67 S.Ct. at 843.

20. *Id.* at 511, 67 S.Ct. at 844.

21. *See* Brussels Convention, art. 3, para. (1).

22. *See Diaz v. Humboldt,* 722 F.2d 1216, 1219 (5th Cir.1984); *Fajardo v. Tidewater, Inc.,* 707 F.2d 858, 862 (5th Cir.1983); *De Oliveira v.* *Delta Marine Drilling Co.,* 707 F.2d 843, 846–47 (5th Cir.1983) (per curiam); *Bailey,* 697 F.2d at 1279–80; *Vaz Borralho v. Keydril Co.,* 696 F.2d 379, 394–95 (5th Cir.1983).

23. *See Diaz,* 722 F.2d at 1219; *Bailey,* 697 F.2d at 1279–80; *Vaz Borralho,* 696 F.2d at 394.