**GREAT PRIZE, S.A.**

v.

**MARINER SHIPPING PTY., LTD.**

**Civ. A. No. 90–2900.**

United States District Court,
E.D. Louisiana.

April 2, 1991.

Order of Amendment May 21, 1991.

---

Harvey G. Gleason, Gustave A. Manthey, Jr., Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., for plaintiff Great Prize, S.A.

Christopher O. Davis, Sheryl Bey, Phelps, Dunbar Law Firms, New Orleans, La., for claimant Intercontinental Shipping Party, Ltd.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court is the motion of Intercontinental Shipping Party, Ltd. to vacate writ of attachment and/or alternatively, to dismiss on the grounds of forum non conveniens. After reviewing the motion, memoranda of counsel, the record and the law, the Court grants the motion to dismiss on the grounds of forum non conveniens and denies the motion to vacate the writ of attachment as moot.

---

**1.** The other dispute in this case between plaintiff, Great Prize, S.A., and Mariner concerns charter hire plaintiff alleges is due from Mariner on another vessel, the M/V GREAT PRIZE,

## INTRODUCTION

Claimant Intercontinental Shipping Party, Ltd. ("ICS") is claiming to make a restricted appearance in this matter pursuant to Supplemental Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims. ICS moves this Court to vacate the writ of attachment levied against the marine diesel oil and heavy fuel oil on board the M/V GOLDEN HOPE. The heart of this case, however, involves whether Mariner Shipping Party, Ltd. ("Mariner") validly transferred ownership of the fuel oil bunkers as part of a sub-time charter to ICS.[1] The Court finds that the doctrine of forum non conveniens applies because resolution of this issue is better suited to another forum.

Mariner time chartered the M/V GOLDEN HOPE from her true owners, Castello Marine Co., Ltd. of Cyprus by charter party dated May 11, 1990. Contemporary documents show that on August 8, 1990, Mariner entered into a voyage charter with Intermare Transport GmbH ("Intermare/Hamburg") for one voyage of the GOLDEN HOPE from New Orleans to Ireland. On August 10, 1990, Great Prize, S.A. ("Great Prize") filed its Verified Complaint seeking to obtain security for $158,-113.71 allegedly owed to it by Mariner under the terms of a charter party on another vessel. Great Prize then obtained a Rule B(1) writ of attachment for bunkers on board the GOLDEN HOPE valued at approximately $91,000. On August 11, 1990, at approximately 1630 hours, the bunkers were seized by the U.S. Marshal while the vessel lay at anchor in the lower Mississippi River. On August 13, 1990, the Court permitted the vessel to move to the ADM buoy berth at Mile 124 AHP of the Mississippi River in order to load a cargo of corn gluten feed pellets for carriage to Ireland. On August 14, 1990, ICS, as claimant of the bunkers in question, moved the Court to dissolve the writ of attachment. The Court denied the motion on August 15,

working in the Far East. This claim is arguably subject to English law and arbitration in London.

1990, after a hearing.[2] ICS subsequently requested that the Court reconsider its ruling, which motion was denied at a hearing held on August 17, 1990.[3] Thereafter, Intermare/Hamburg, the voyage charterer, posted security on behalf of ICS in the amount of $91,000, and the vessel was permitted to set sail. The cargo eventually reached its destination and a final accounting between Intermare/Hamburg and ICS was prepared.

## FACTS

In early August 1990, Mariner, an Australian entity of which ICS is a 50% shareholder, was experiencing financial difficulties. In fact, according to Great Prize, Mariner had not been making its charter hire payments to Great Prize for some months previous. ICS claims that in order for Mariner to meet its hire obligations arising from a NYPE Form Time Charter Party of the GOLDEN HOPE, Mariner sub-time chartered the vessel on August 10, 1990 to ICS on "back-to-back" terms[4] with the time charter previously executed by Mariner and the vessel's head owners.[5] ICS also claims that Mariner assigned the voyage charter with Intermare/Hamburg, entered into on August 8, 1990, to ICS. ICS also offers documents attesting to Intermare/Hamburg's consent to such assignment. Additionally, ICS offers documents attesting to Mariner's retention by ICS to act as agent regarding the voyage charter of the vessel.[6] And, importantly, ICS maintains that all these terms were negotiated and the vessel was delivered by Mariner to ICS not later than 0310 hours local time, August 11, 1990, approximately 13 hours before the bunkers on board were seized. Mariner has since gone into receivership under the laws of Australia.

Plaintiff. Great Prize argues that the transaction described above was concocted after the bunkers were seized. Great Prize notes that the time charter was a verbal agreement entered into by ICS and Mariner on August 9, 1990.[7] Plaintiff argues that such an oral agreement between ICS and its affiliate, Mariner, is suspect, especially in light of the chronology of events described above. In addition, Great Prize argues that by all indications, even four days after the seizure, Mariner was still acting as the time charterer of the GOLDEN HOPE. Even as late as August 15, 1990, Mariner's local agent had no indication of the sub-time charter party. Great

2. The Court denied the motion to vacate the Writ of Attachment, at least initially, because the copy of the sub-time charter between ICS and Mariner provided to the Court at the hearing was illegible. At a subsequent hearing ICS provided more legible copies.

3. The Court noted during the hearing that there appeared to be substantial facts in controversy regarding whether the sub-time charter between Mariner and ICS was devised for the purpose of avoiding the seizure of the bunkers in question. At the hearing, Great Prize re-emphasized that 50% of Mariner's stock was owned by ICS and that these two corporations shared some common directors. In denying the motion to vacate, the Court acknowledged that discovery needed to be taken with respect to the relationship between Mariner and ICS during the time period in question, as well as on the transaction itself, since the documents were unclear as to exactly when the sub-time charter was executed.

4. "Back-to-back" as used by ICS means that the time charter party between ICS and Mariner was memorialized on the same New York Produce Exchange Time Charter form as that of the head time charter between Mariner and the vessel's head owner.

5. Additionally, ICS claims that Mariner agreed to credit ICS for the value of bunkers taken over by ICS against payment due from Mariner for the value of bunkers expected to be on board when the GOLDEN HOPE was redelivered to Mariner at the end of the voyage to Ireland. *See* Confidential Addendum No. 1 (ICS Exhibits D, E, and I attached to their motion). ICS also claims that pursuant to the terms of Confidential Addendum No. 1, ICS instructed its bank, Hong Kong Bank of Australia, Ltd., to transfer $72,714.95 to the account of the head owners for the next 15 days of charter hire owed on the GOLDEN HOPE.

6. However, ICS acknowledges that this agency relationship was not disclosed to either the crew or Intermare/Hamburg's local husbanding agents, deeming such disclosure "unnecessary" and "superfluous."

7. At the August 15, 1990 hearing ICS produced no evidence of the time charter agreement other than an unsigned and illegible copy of a charter party form.

Prize steadfastly maintains that because ICS was and continues to be a creditor of Mariner, there is ample motivation for ICS to try to preserve and retain Mariner's assets for itself. Plaintiff also argues that, procedurally, ICS has no right under Supplemental Rule E(8) to pursue its ownership interest in the bunkers unless and until it intervenes, since Great Prize has made no claim against ICS. To date ICS has not intervened in this matter.

## ANALYSIS

■■■ A defendant[8] has the burden of invoking the doctrine of forum non conveniens and moving to dismiss in favor of a foreign forum. *In re Air Crash Disaster Near New Orleans*, 821 F.2d 1147, 1164 (5th Cir.1987) (citations omitted), *vacated and remanded on other grounds sub nom., Pan American World Airways v. Lopez*, 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d 400 (1989). Therefore, the moving defendant must establish that an adequate and available forum exists as to all defendants. *Id.* If the defendant carries this initial burden, it must also establish that the private and public interests weigh heavily on the side of trial in the foreign forum. *Id.*[9] To carry this burden the moving defendant need not submit overly detailed affidavits, but it "must provide enough information to enable the district court to balance the parties [sic] interests." *Id.* at 1164–65 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258, 102 S.Ct. 252, 267, 70 L.Ed.2d 419 (1981)).[10] Finally, the moving defendant must submit its motion in a timely manner. *Id.* at 1165.[11]

■■■ As noted previously, both ICS and Mariner are Australian entities, and thus amenable to an Australian forum. Furthermore, the public factors weigh in favor

of dismissal. The events leading up to this controversy occurred primarily in Australia. The only connection this controversy has with the United States is that the vessel's bunkers were seized while here, and that the complaint was filed upon the arrival of the vessel in the Eastern District of Louisiana. Furthermore, the underlying dispute between Great Prize and Mariner for unpaid charter hire on the M/V GREAT PRIZE does not have a nexus with the United States. Indeed, both the relationship between ICS and Mariner under the sub-time charter and the relationship between Great Prize and Mariner concerning the missed charter hire payments under their charter party involve English law and are likely subject to arbitration in London. As such, the Court finds that there is little or no public interest in this dispute, especially inasmuch as foreign law will likely predominate if jurisdiction is retained. *In re Air Crash Disaster Near New Orleans*, 821 F.2d at 1166 (citation omitted). Further, the Court finds that from all the documents and conflicting affidavits submitted in this matter, retaining the case would immerse the Court in "untang[ling] problems in … law foreign to itself." *Piper Aircraft Co.*, 454 U.S. at 251, 102 S.Ct. at 2.

■■■ The private interests also weigh in favor of dismissal:

> The factors to be considered in evaluating the private interests involved include the relative ease of access to sources of proof, the availability of compulsory process, the cost of obtaining attendance of willing witnesses, the enforceability of a judgment if one is obtained, and practical considerations concerning the administration of trial.

---

**8.** The Court finds that for purposes of the present motion, ICS is a "defendant" and may urge the doctrine of forum non conveniens because it is a "person claiming an interest" in the bunkers. *See* note 12, *infra.*

**9.** *See also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (the balance of public and private interests must weigh in favor of the defendant).

**10.** The *Reyno* court noted that the strong presumption which favors a plaintiff's choice of forum applies with less force when the plaintiff is foreign. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56, 102 S.Ct. 252, 265–66, 70 L.Ed.2d 419 (1981).

**11.** There is really no dispute over timing in the present motion. This case is still at a very early stage. Indeed, as noted elsewhere in this opinion, ICS is not even a party to the case yet.

*Perez & Compania (Cataluna), S.A. v. M/V MEXICO I*, 826 F.2d 1449, 1452–53 (5th Cir.1987) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947)). All the parties to this lawsuit are foreign.[12] If an agreement to sub-time charter the GOLDEN HOPE was made between ICS and Mariner, it occurred in Australia. Not one of the witnesses who has personal knowledge regarding the sub-time charter party transaction in question resides in the United States. Virtually all relevant witnesses and evidence are in Australia or Europe. Necessarily then, there are numerous witnesses who are not subject to the compulsory process of this Court.[13]

Factual issues remain to be determined, namely whether Mariner validly transferred ownership of the GOLDEN HOPE's bunkers to ICS. Additionally, Mariner is now in receivership in Australia, further implicating the necessity for Australian courts to hear and resolve this conflict. And, once the Australian courts determine whether there was a valid charter party agreement between ICS and Mariner, the initial dispute between Mariner and Great Prize over charter hire payments on the M/V GREAT PRIZE, involving whether the parties must submit to arbitration in London, will be more readily determinable.

In the interest of justice, the Court must, however, make this dismissal conditional. And, both conditions the Court sets have been specifically sanctioned by the Fifth Circuit. *Id.* at 1453. First, ICS and Mariner must by formal agreement submit to the jurisdiction of the Australian courts and waive any applicable statute of limitations defense. In this regard, the Court notes that Great Prize has not indicated it cannot pursue its claims against Mariner or ICS in the Australian courts, or that it will in any way be treated unfairly by the Australian courts.[14] Second, ICS and Mariner must by formal agreement agree to satisfy any final judgment rendered by any court where this suit may be properly brought. If they do not satisfy any judgment, or if ICS or Mariner attempt to obstruct the maintenance of this action in the Australian forum, the plaintiff may return to this forum.

Once these conditions have been fulfilled, ICS and/or Intermare/Hamburg may move this Court for disposition of the $91,000 security posted on behalf of ICS.

Accordingly,

IT IS ORDERED that this case is DISMISSED WITHOUT PREJUDICE under the conditions noted in the opinion contained herewith, each party to bear its own costs.

## ORDER OF AMENDMENT

Before the Court are two motions: (1) plaintiff's motion to alter or amend judgment; and (2) Intercontinental Shipping Party's motion to amend the Order and Reasons entered by this Court on April 4, 1991. After reviewing the motions, memoranda of counsel, the record and the law,

---

**12.** The Court realizes that ICS is not presently a party to this suit. ICS claims it is making a limited appearance pursuant to Supplemental Rule E(8) in order to assert its ownership rights to the GOLDEN HOPE's bunkers. Great Prize maintains that this is improper in view of the fact that ICS has not intervened, and is not a party. Great Prize has offered no specific authority for the proposition that ICS must be a party in order to "defend against an admiralty and maritime claim." However, the Court finds that regardless of the availability of Rule E(8), ICS may properly bring its motion to vacate the writ of attachment and/or to dismiss on the grounds of forum non conveniens before the Court pursuant to Rule E(4)(f), which states in pertinent part:

Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

**13.** It is undesirable for such cases to be tried on depositions and affidavits, which is quite likely how the present case would have to be tried should this Court retain it. *Perez & Compania (Cataluna), S.A. v. M/V MEXICO I*, 826 F.2d 1449, 1453 (5th Cir.1987) (citing *Gulf Oil Corp.*, 330 U.S. at 511, 67 S.Ct. at 844).

**14.** The Court therefore finds that the Australian forum is both available to the parties and adequate in terms of remedies. *See In re Air Crash Disaster Near New Orleans*, 821 F.2d at 1165.

the Court denies plaintiff's motion and grants Intercontinental's motion in part.[1]

First, the Court notes that plaintiff's motion might be more properly styled as a motion for reconsideration. By Order and Reasons entered April 4, 1991, the Court dismissed this action on *forum non conveniens* grounds. In its memorandum, Great Prize urges the Court to amend its prior Order and reopen the case, vacating the dismissal. Plaintiff argues, much as it did in Intercontinental's original motion, that the question of ownership of the bunkers it seized on board the M/V GOLDEN HOPE must be litigated in this forum. The Court disagrees. The Order of April 4, 1991 was structured in such a way that Great Prize's right to pursue its remedies is preserved, while at the same time this matter is litigated in the forum most convenient to the parties, the claimant, and the witnesses.

 With respect to Intercontinental's motion to amend, Intercontinental urges: (1) that the Court set a time limit within which Great Prize must bring its claim in an Australian court; and (2) that the Court limit any judgment that Intercontinental and/or Mariner must satisfy in an Australian court to $91,000, the security posted for the value of the bunkers. The Court believes the first requested amendment has merit, especially since the original Order also requires Intercontinental and Mariner to waive any applicable statute of limitations defenses. The second requested amendment is unnecessary. The issue in this case is who owned the bunkers on board the M/V GOLDEN HOPE when they were seized. Therefore, the Court's original Order already implicitly requires Inter-

continental and/or Mariner to satisfy any judgment, but only regarding *ownership of the bunkers*. That amount has already been acknowledged by the plaintiff to be $91,000, the amount posted for security. Therefore, we will not limit the amount of *any* judgment Mariner must satisfy since other matters pending between Mariner and Great Prize are in arbitration in London.[2] In other words, this Court has the authority to require Intercontinental/Mariner to satisfy a judgment (as a condition of dismissal) only with respect to the limit of our jurisdiction, *i.e.*, the *res*, $91,000.

Accordingly,

IT IS ORDERED that Great Prize's motion to amend judgment is DENIED.

IT IS FURTHER ORDERED that Intercontinental's motion to amend the Order and Reasons of April 4, 1991 is GRANTED consistent with the opinions stated herein, and the Court's Order and Reasons entered April 4, 1991 is hereby amended to reflect that Great Prize must institute any such action in an Australian forum against Mariner and/or Intercontinental not later than November 21, 1991.

IT IS FURTHER ORDERED that the hearing set in this matter for May 22, 1991 is CANCELED.

---

1. The Court has also reviewed the full five-page "Hustwith/Cadwallader Memo." Three pages of this memo were already produced by ICS. The Magistrate ordered the other two pages to be produced to the Court *in camera,* and those pages were produced to the Court this date. Plaintiff has persistently maintained that ICS's unwillingness to produce the full text of this document is a strong indication that the document would support plaintiff's contention that the sub-time charter party in question was concocted after the seizure of the bunkers on board the M/V GOLDEN HOPE. After review, we find that the document does not contain any information which could be considered relevant to the issue before the Court—ownership of the

bunkers on board the M/V GOLDEN HOPE. Accordingly, the Court does not believe it would serve any useful purpose to require ICS to produce these two pages to plaintiff.

2. On April 11, 1991, an arbitration panel in London directed that Mariner pay to Great Prize $293,522.30 plus interest at 10% per annum from September 1, 1990 until April 11, 1991 on their claim regarding a charter hire dispute on the M/V GREAT PRIZE. This dispute, however, does not involve the question of ownership of the bunkers on board the M/V GOLDEN HOPE.