Leo J. KLEKAMP, Plaintiff,

v.

BLAW-KNOX COMPANY, Defendant.

No. 355-57.

United States District Court
S. D. California,
Central Division.

Dec. 23, 1959.

Frederic B. Tankel and Richard I. M. Kelton, Los Angeles, Cal., for plaintiff.

O'Melveny & Myers, Los Angeles, Cal., for defendant.

BYRNE, District Judge.

Plaintiff was employed as a piping engineer either by defendant Blaw-Knox Company (hereinafter B-K), or by its Venezuela subsidiary Blaw-Knox de Venezuela (hereinafter B-K deV). The contract was negotiated in a hotel in Pittsburgh by the plaintiff and two gentlemen (Mr. DeSeife and Mr. Bayer) acting on behalf of the corporation or corporations. The plaintiff was employed to work on a construction job in Venezuela under a contract that B-K deV had entered into with the Government of Venezuela.

At the end of about four months on the job in Venezuela the plaintiff was given a two-week notice of termination, his employment terminated and he was returned to the United States at the expense of B-K deV. Plaintiff contends that the defendant B-K was a party to the contract; that under the terms of the contract his employment was for a two-year period and that it was improperly terminated without just cause. This action is for damages for breach of the contract.

The defendant B-K defends on the ground that it was not a party to the contract. It asserts that the contract,

was between the plaintiff and B-K deV. It further contends that there was no breach of the contract.

Plaintiff takes the position that he was employed by B-K and that he was "on loan" to B-K deV. He testified that such an arrangement is not uncommon in construction work, that he had been so employed before by a different company. The testimony of the defendant's witness McKeefe, who saw to the Pittsburgh processing of Klekamp prior to his departure for Venezuela, tends to support the plaintiff's contention. McKeefe testified that at another period while employed by B-K he did some work in Venezuela for B-K deV, saying, "I was on loan". McKeefe sent out several documents, all on B-K stationery, with reference to Klekamp's employment. Defendant's version of the arrangement was that B-K was acting as an agent in processing employees of B-K deV and used its own stationery because that was all that was available to it at the time. B-K also, it is urged, paid the base salaries of the B-K deV employees.

Further indication that defendant regarded itself as Klekamp's employer is its action in deducting Federal Insurance Contributions Act withholdings under Section 3102 of the Revenue Code, 26 U.S.C.A. § 3102. Section 3102 recites that the tax "shall be collected by the employer of the taxpayer". Defendant attempts to meet this evidence by pointing to Section 3121($l$), which provides that domestic corporations may make FICA deductions for employees of their foreign subsidiaries. This latter section, however, provides that such an arrangement is to be made pursuant to a specific agreement with the Secretary of the Treasury, and there is no evidence of such an agreement. B-K also prepared and directed Klekamp to fill out a claim of exemption from withholding taxes and a withholding tax statement. The most plausible explanation of the defendant's activities is that it considered itself the employer of Klekamp.

■ After a careful analysis of all the evidence, the Court finds as a fact that the defendant B-K was a party to the contract. It may be held liable as a principal if it breached the contract.

During the negotiations in the Pittsburgh hotel the corporation representatives delivered to Klekamp a leaflet entitled "Terms of Employment", which included a paragraph relating to termination of employment reading as follows:

"The Venezuelan Labor Law provides that the employee may terminate his employment at any time by giving advance notice to the Company as follows:

"1. After one month of work, prior notice of one week.

"2. After six months of work, prior notice of fifteen days.

"3. After one year of work, prior notice of one month.

"In the event of such resignation, however, the Company does not pay the return travel expenses to the point of origin of the overseas employee or his family if on married status, except when regular foreign vacation is due. Salary and other payments stop on the effective date of the resignation.

"*Under the Venezuelan Labor Law, the Company also may terminate employment at any time by giving the same advance notice as specified above, or by making payment in lieu of notice.* Advance notice is not required, however, if the employee is discharged for just cause as defined in the Venezuelan Labor Law, which includes such causes as dishonesty, immoral conduct, intentional or negligent acts resulting in material damage or affecting the safety of others, unjustified absence from work, and the like. In case the Company terminates the services of an employee for reasons other than just cause as defined above, the Venezuelan Labor Law provides for payment by the Company of liberal termination indemnities to the employee. Company policy provides

for effecting termination only for valid reasons after careful consideration of all pertinent facts.

"In the event the Company terminates employment for other than just cause as defined in the Venezuelan Labor Law (see above), salary during travel time and return travel expense to his point of origin by the route and carrier selected by the company for the overseas employee, and his family if on approved married status, are paid by the Company. In case of discharge for cause, however, the return travel expense must be borne by the employee, and salary and other payments stop on the date of discharge."

■ At the Pittsburgh meeting Bayer told Klekamp that the printed "Terms" constituted the basis of the employment. Klekamp read through the printed "Terms", or at least glanced at them while at the hotel, and read them soon thereafter. It is also clear that DeSeife and Bayer told Klekamp at that meeting that termination by the company involved either prior notice or payment in lieu of notice, and that upon termination for other than just cause, additional indemnities were due under the Venezuela law. Under these circumstances the conclusion seems inescapable that the printed "Terms" are to be considered a part of the agreement and, hence, that the portion quoted pertaining to termination is to govern this issue.

■■ Applying the printed "Terms" to the facts, it is clear that the defendant in effecting plaintiff's termination committed no breach. He was notified of his termination on January 2nd, and received full pay and allowances until January 17, 1956, when he left for the United States. In addition he was given one week's pay in lieu of notice, five days' unemployment compensation, five days' vacation pay, all appropriate utilidades and four days' pay on account of travel time. In other words, he was given what was due him as though he had been terminated for other than just cause under the provisions of the printed "Terms".

The same result would be reached if, rather than interpreting the "Terms" as part of the contract, the "Terms" were considered *dehors* the contract and, applying the governing principles of conflicts of law, the Venezuela contract law were applied. California Civil Code, § 1646, provides that "a contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law * * * of the place where it is made." What is more to the point is that it is the intention of the parties as to governing law that is controlling, Boole v. Union Marine Ins. Co., 52 Cal.App. 207, 198 P. 416, and taking the "Terms" as extrinsic to the contract, they are evidence sufficient to indicate the parties' intent that the Venezuela law is to apply. The "Terms" constitute a statement of the Venezuela labor law.

The findings of fact and conclusions of law set forth in this memorandum shall be deemed to be the findings of fact and conclusions of law in the case, and no further findings or conclusions will be necessary. See Rule 52, F.R.Civ.P., 28 U.S.C.A. Counsel for the defendant is directed to prepare, serve and lodge a formal judgment in accordance with local Rule 7, West's Ann.Cal.Code.