George C. CURTIS, Plaintiff,

v.

HARRY WINSTON, INC., Defendant.

No. 86 Civ. 2899 (VLB).

United States District Court,
S.D. New York. .

Feb. 23, 1987.

---

Stuart Potter, Claudia Conway, Butler, Fitzgerald & Potter, New York City, for plaintiff.

A. Richard Golub, New York City, for defendant.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

■ Defendant Harry Winston, Inc. ("Winston"), a New York corporation engaged in the business of manufacturing and distributing high quality precious stones, with its principal place of business in New York, has moved pursuant to F.R. Civ.P. 12(b)(1) and 12(b)(6)[1] to dismiss the

---

1. A Rule 12(b)(6) motion is addressed to the face of the pleadings. The pleadings are deemed to include any document attached as an exhibit, F.R.Civ.P. 10(c), or any document incorporated by reference. *Goldman v. Belden,* 754 F.2d 1059, 1065–66 (2d Cir.1985) (*citations omitted*). Since defendant has moved to dismiss pursuant to F.R.Civ.P. 12(b)(6), plaintiff argues that the affidavits submitted by defendant in support of its motion should be disregarded, or alternatively if the court considers these affida-vits then the motion should be converted to a Rule 56 motion. However, defendant has also moved pursuant to F.R.Civ.P. 12(b)(1), which is not limited to the face of the pleadings. Therefore, defendant's affidavits can be considered by the court for subject matter jurisdiction purposes, as can the affidavits submitted by plaintiff in response. In any event, the parties appear to be treating this motion as one for summary judgment, as they have not only submitted

complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. For the reasons set forth below, the motion is denied.

## I.

Plaintiff George Curtis ("Curtis") was hired in New York by Winston on February 2, 1977, to work as a manager for its diamond-related operations in Venezuela. No written contract appears to have been signed. Plaintiff worked in this capacity continuously until his termination by Winston on October 14, 1985, after Winston had determined that its Venezuelan operation was unprofitable. During his tenure in Venezuela, plaintiff became a Venezuelan citizen. He is, however, presently residing in North Carolina. Throughout his employment, plaintiff had been paid his salary check from defendant in New York and was sent W–2 forms annually from New York.

Plaintiff alleges that under Venezuelan labor law, Winston was obligated to pay him once a year a "vacation bonus" consisting of one day's salary for each year of his employment. Since Winston has not complied with this provision, despite due demand, plaintiff claims he is owed in excess of $10,000. Plaintiff further alleges that under Venezuelan labor law, Winston is liable for severance pay, including a lump sum representing "seniority compensation," a lump sum representing "unemployment compensation," and a lump sum representing interest on the seniority and unemployment compensation, as well as attorneys' fees incurred to enforce his rights.[2]

In addition to these statutory claims, plaintiff alleges that pursuant to his employment agreement, Winston agreed to pay roundtrip relocation expenses to him, and also to pay an annual bonus of $7500.

Defendant moves for dismissal on the following grounds: (1) the statutory claims predicated on Venezuelan law are inimical to the laws of New York and, under the applicable conflict of laws theory, New York law must apply; (2) under New York principles of comity, the court should refuse to enforce Venezuelan labor law; and (3) the contractual claims set forth in the complaint are barred by the New York Statute of Frauds.

## II.

The threshold question in this somewhat novel case is that of the law (or laws) to be applied. "In cases in which questions of foreign law arise, and where federal jurisdiction is founded on diversity, it is well-settled that the federal courts must apply the conflicts of laws rule of the forum state." 1A–Pt 2 *Moore's Federal Practice* ¶ 0.316[5] at 3224–25 (1985). "If the conflicts rule requires that foreign law be applied, the federal courts must apply it." *Id.* See *Day and Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975).

In this case, New York is the forum state, and New York's conflict of law rules apply.

Certain of the claims are grounded in Venezuelan statutory law. Since the services of plaintiff were rendered in Venezuela, as to those statutory claims Venezuela has a significant relationship to the matters in controversy.

Defendant relies on a line of cases which stand for the proposition that with respect to the issue of damages or compensation, the law of the local forum applies over the law of foreign jurisdictions. See, e.g., *Gor-*

---

affidavits but also statements pursuant to Rule 3(g) of the Civil Rules of this Court.

**2.** Curtis claims further that since Venezuelan law exempts from taxation all statutory benefits payable to him, had Winston paid him the amounts due and owing while he was still in Venezuela, he would not be liable for taxes of any kind on those amounts. Since plaintiff has now moved to his former home in North Carolina, where he will be subject to federal and state tax liability, plaintiff argues that in order to put him in as good a position as he would have been in had Winston timely complied with its alleged statutory obligations, he should be awarded the amount of tax liability attributable to the unjustified delay in payment.

*don v. Eastern Airlines, Inc.,* 391 F. Supp. 31 (S.D.N.Y.1975); *Sinva, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.,* 253 F.Supp. 359 (S.D.N.Y.1966). It also contends that the Venezuelan statutes invoked by plaintiff must be confined territorially to Venezuela, and that Venezuelan labor law is contrary to New York public policy.

Plaintiff argues that his claims are purely statutory; that he does not seek relief from an unjustified dismissal or allege wrongful discharge; and that Venezuelan labor law is applicable to American employees who have worked within Venezuelan territorial limits.

■ As to the statutory claims, the issue ultimately before the court is whether a plaintiff's claims predicated upon the labor laws of a foreign country, where he has been employed by an American corporation, are cognizable in a New York court, and hence in a diversity action in federal court. While the law in this area is somewhat unsettled, the answer appears to be "yes".

Inapposite to the case before me are decisions entailing the extent, if any, to which federal law applies to employment in a foreign country. For example, in *Pfeiffer v. Wm. Wrigley Jr. Company,* 755 F.2d 554 (7th Cir.1985), an American citizen who had been employed in Germany by a wholly owned subsidiary of an American company was discharged and brought suit in federal court alleging violations of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The question before the Seventh Circuit was whether the ADEA had any "extraterritorial reach." The court answered the question in the negative. Similarly, in *Cleary v. U.S. Lines, Inc.,* 728 F.2d 607 (3rd Cir.1984), *aff'g* 555 F.Supp. 1251 (D.N.J.1983), the Third Circuit affirmed the district court's ruling that in a suit brought by an American citizen employed in England by an American corporation pursuant to ADEA, the Act did not apply to the plaintiff.

Here the issue as to the statutory claims is quite different. It is whether statutes of a given country will be applied to employment in that country by a federal court in a diversity action.

The case that is most analogous to the instant case is *Randall v. Arabian American Oil Company,* 778 F.2d 1146 (5th Cir. 1985), *reh'g den. en banc,* 782 F.2d 1040 (5th Cir.1986), which I examine in detail. In *Randall* plaintiff, invoking the laws of Saudi Arabia, brought a diversity action against his former employer for wrongful discharge.

Plaintiff, a Virginia citizen, in 1973 had applied in the United States to defendant, a Delaware corporation with its principal place of business in Texas, for an employment position in Saudi Arabia. Plaintiff was hired, and lived and worked in Dharan, Saudi Arabia, until his termination on August 31, 1981. He was allegedly terminated for diverting to his own use and benefit certain company goods, and services of employees that he supervised. After receiving his termination notice, he investigated his rights to contest the termination and to that end obtained a copy of defendant's internal rules and a copy of Saudi Arabia's Labor and Workmen Law. In his suit in federal court he claimed that he suffered damages under Saudi Arabian labor law in excess of $10,000.[3]

The *Randall* district court had entered summary judgment for the defendant, which had alleged that under applicable Saudi Arabian law the dispute could be heard only by the Saudi Labor Commission. The Fifth Circuit disagreed, ruling that "[a]lthough there is no question that Saudi Arabian substantive law provides the rule of decision in this case, [it sees] no reason why [plaintiff's] claim cannot be adjudicated in [the] federal courts if subject matter and in personam jurisdiction exist." 778 F.2d at 1147–48.

**3.** Plaintiff alleges that defendant prevented him from pursuing his complaint in Saudi Arabia.

*See* 778 F.2d at 1148.

The Fifth Circuit had no trouble determining that the district court had subject matter jurisdiction: the amount in controversy exceeded $10,000, and there was diversity of citizenship. It ruled that the exclusive jurisdiction provisions of Saudi Arabian law could not deprive the U.S. district court of subject matter jurisdiction. *Id.* at 1150. It "rejected outright the notion that the law of a foreign country can unilaterally curtail the power of our federal courts to hear a dispute even though the dispute involves rights fixed by the laws of another nation." *Id.*

The Fifth Circuit distinguished the issue of whether a court has subject matter jurisdiction from the issue of what law governs the dispute. Acknowledging that Texas conflicts rules applied, the court found that "[e]nforcement of this action by a federal court sitting in diversity does not violate the good morals or natural justice of the State of Texas nor would it be prejudicial to the general interests of its citizens." *Id.* In *Randall*, it is significant to note, it was apparently conceded that Saudi Arabian substantive law applied. The ultimate issue was "whether in adopting Saudi law as the rule of decision (pursuant to Texas conflicts law) [the court] must accept the exclusive jurisdiction provision as part of the substantive law to be applied." *Id.* at 1151. In not enforcing the exclusive jurisdiction provision of Saudi Arabian law, the Fifth Circuit found "paramount our interest in providing a forum to a United States citizen seeking to sue a United States corporation on an employment contract negotiated and made in the United States." *Id.* at 1153.

There are differences between *Randall* and the instant case. Thus while it was apparently conceded in *Randall* that Saudi Arabian substantive law applied, the issue of whether Venezuelan substantive law applies here is vigorously contested. Plaintiff here is a citizen of Venezuela notwithstanding his current residence in North Carolina, whereas plaintiff in *Randall* was an American citizen. Plaintiff in *Randall* sought relief for wrongful discharge; plaintiff here seeks to enforce his rights under Venezuelan labor law.

Nonetheless, as in *Randall*, there is undoubtedly subject matter jurisdiction of the instant dispute by virtue of diversity of citizenship and adequate amount in controversy. Moreover, as in *Randall*, the issue of whether a court has subject matter jurisdiction can be readily distinguished from the issue of what law governs the dispute.

Defendant's argument that Venezuelan labor law is repugnant to New York public policy is without merit. The fact that Venezuelan law accords greater benefits to workers than does New York law is an insufficient basis to refuse to enforce Venezuelan law. International comity applies unless it would require "approval of a transaction which is inherently vicious, wicked, or immoral, and shocking to the prevailing moral sense." *International Hotels Corporation v. Golden*, 15 N.Y.2d 9, 254 N.Y.S.2d 527, 529, 203 N.E.2d 210, 211 (Ct.App.1964) *cited in Drexel Burnham Lambert Group, Inc. v. Galadari*, 610 F.Supp. 114, 119 (S.D.N.Y.1985), *aff'd. in part, vac. and remd. in part*, 777 F.2d 877 (2d Cir.1985). That is not the case here. While federal courts are not often called on to apply Venezuelan labor law,[4]

**4.** My research has revealed only four reported cases in which Venezuelan labor law has been discussed by federal courts, and none raises jurisdictional or comity issues which are on point. *See Vintilla v. U.S. Steel Corporation Plan For Employee Pension Benefits*, 606 F.Supp. 640 (W.D.Pa.1985), *aff'd.* 782 F.2d 1033 (3rd Cir.1986), *cert. den.* —— U.S. ——, 106 S.Ct. 1791, 90 L.Ed.2d 337 (1986) (noting in ERISA case that according to Venezuelan law "all workers in Venezuela are entitled to certain benefits in excess of what might be considered typical com-

pensation in the U.S."); *Chirinos de Alvarez v. Creole Petroleum Corporation*, 613 F.2d 1240 (3d Cir.1980) (Jones Act not applicable to claim against American corporation for death in Venezuela); *Bachmann v. Blaw-Knox Co.*, 198 F.Supp. 617 (W.D.Pa.1961) (breach of contract for wrongful termination brought by American plaintiffs working in Venezuela); *Klekamp v. Blaw-Knox Co.*, 179 F.Supp. 328 (S.D.Calif.1959) (breach of contract and wrongful termination under Venezuelan law).

on the facts of this case there is no compelling reason why this court should not do so. On the basis of the principles enunciated in *Randall* as well as the principles of international comity and fairness, I find that Venezuelan substantive law applies to plaintiff's statutory claims. Plaintiff is entitled to a forum in the United States in order to bring suit against an American corporation for failing to comply with Venezuelan labor law.[5]

### III.

In addition to the Venezuelan statutory claims, plaintiff has asserted two breach of contract claims, each pertaining to contractual obligations allegedly undertaken by defendant at the time plaintiff was employed. He alleges first that he was promised the cost of his relocation from Venezuela to the United States upon his termination. In his second contract claim he alleges that he agreed to waive his right to statutory "profit sharing" under Venezuelan law[6] in return for defendant's agreement to pay him a lump sum of $7500 annually. Plaintiff alleges that defendant failed to pay him this sum in 1984 or 1985, despite due demand, and is therefore liable to plaintiff for $15,000.

■ Under New York law, "the law of the state having the most significant relationship to the matter in controversy governs contract disputes in the absence of an effective choice by the parties." *Silverman v. Worsham Bros. Co., Inc.*, 625 F.Supp. 820, 826 (S.D.N.Y.1986) (*citations omitted*). As the agreement between Curtis and Winston was negotiated and arranged in New York, and Winston is a New York corporation with its principal place of business in New York, and since Curtis was paid from New York, as to the contract claims New York has the most significant relationship to the matter in controversy.

■ New York law is thus applicable in construing the employment agreement, and inquiry must be made as to the applicability of the New York Statute of Frauds. Defendant argues that by the very language in the complaint, plaintiff admits that his claims are based upon an oral contract which could not be performed within one year and therefore come within the bar of the Statute of Frauds.[7]

"An oral agreement is enforceable under New York law and not within the Statute of Frauds, N.Y.Gen.Obl.Law § 5–701 (McKinney 1964), if it can be construed as being capable of performance within one year of its making." *Dawson v. G. Malina, Inc.*, 463 F.Supp. 461, 472 (S.D.N.Y. 1978) *citing North Shore Bottling Co. v. C. Schmidt & Sons, Inc.*, 22 N.Y.2d 171, 292 N.Y.S.2d 86, 239 N.E.2d 189 (Ct.App. 1968). *See also Klock v. Lehman Brothers Kuhn Loeb Inc.*, 584 F.Supp. 210, 222 n. 19 (S.D.N.Y.1984). In *Dawson* the oral agreement alleged by plaintiff was clearly capable of performance within one year of its making, and thus the court held that the Statute of Frauds "does not pose any problem to its enforcement." *Dawson*, 463 F.Supp. at 472. The "crucial test for determining whether an alleged contract is within the Statute of Frauds is whether 'by its terms' the agreement is not to be performed within one year." *Klock*, 584 F.Supp. at 222 n. 19, *citing North Shore Bottling Co.*, 292 N.Y.S.2d at 88–89, 239

---

5. Plaintiff was an American citizen from 1977 to 1981 during his employment in Venezuela and subsequently became a Venezuelan citizen. There does not appear to be anything in Venezuelan law which would prevent an American citizen working in Venezuela from enjoying the benefits available to Venezuelan workers. Thus the fact that plaintiff was a Venezuelan citizen during only half of his Venezuelan employment is of no consequence.

6. Plaintiff alleges that pursuant to Venezuelan labor law defendant was obligated to pay him a minimum mandated profit-sharing bonus based on his salary.

7. Defendant contends that the allegations of the complaint themselves establish that defendant's alleged undertakings could not have been performed within one year. Thus in paragraph 15 plaintiff alleges that he was guaranteed a lump sum payment annually for 1984 and 1985 and he sues in the complaint for two years of the lump sum payment; in paragraph 16 he alleges that expenses are due for relocation eight years subsequent to his employment.

N.E.2d at 190–191. Nothing before me suggests that under his oral contract plaintiff was necessarily to have worked longer than one year for defendant. As an at-will employee, Curtis could have been terminated by Winston at any time, including within the first year of what turned out to be an eight-year term of employment.

The next conference in this case will be held on March 16, 1987 at 9:15 a.m. in courtroom 2703.

SO ORDERED.