**Joseph M. VEITZ, Jr., Plaintiff,**

v.

**UNISYS CORPORATION, Defendant.**

**Civ. A. No. 87–24–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Nov. 17, 1987.

---

Joseph R. Mayes, Samuel W. Meekins, Jr., Wolcott, Rivers, Wheary, Basnight & Kelly, P.C., Virginia Beach, Va., for plaintiff.

A.W. VanderMeer, Jr., Kelly O. Stokes, Hunton & Williams, Norfolk, Va., Paul M. Thompson, Hunton & Williams, Richmond, Va., for defendant.

### ORDER

DOUMAR, District Judge.

This matter concerns Count Three of the plaintiff's complaint, in which the plaintiff alleges he has rights to benefits under Saudi Arabian law for overtime work he performed in Saudi Arabia. For reasons set forth below, this Court DENIES defendant's Motion to Dismiss Count Three of Plaintiff's Complaint or in the Alternative for Summary Judgment, as well as plaintiff's Motion for Default Judgment and for Summary Judgment. The Court does find, however, that under Count III certain portions of the claim are barred by the statute of limitations of Saudi Arabia.

In the plaintiff's original complaint, filed on January 16, 1987, he alleged that the defendant owed him overtime compensation under the Fair Labor Standards Act

and the defendant's Field Engineer's Manual. On April 16, 1987, the Court denied the defendant's Motion to Dismiss or in the alternative for Summary Judgment, acknowledging that the parties had agreed to dismiss Count One which regarded the Fair Labor Standards Act claim. The plaintiff was allowed to amend his complaint on July 27, 1987, to include Count Three, the basis of the motions now before the Court. The Court will consider the defendant's motion first since it was filed before the plaintiff's motion.

The defendant argues that the Court should find for the defendant as a matter of law because the plaintiff's claim is without grounds for three reasons. First, the claim is under exclusive Saudi Arabian jurisdiction and, therefore, this Court lacks jurisdiction. Second, the claim has no merit under New York law, which applies due to conflicts of laws principles. Third, the claim is barred by the statute of limitations.

The Saudi Arabian law which creates the duties of employers as well as the rights of employees is the "Labor and Workmen Law" (Kingdom of Saudi Arabia) ("Saudi labor law"). Articles 172, 174, 176 and 179 provide that exclusive jurisdiction of alleged violations and disputes will be in the "Labor and Settlement of Disputes Commissions" ("Saudi labor commissions") composed of "Primary" and "Supreme" Commissions. The defendant claims that since the Saudi labor law creates the rights and duties while retaining exclusive jurisdiction in Saudi labor commissions, this Court has no jurisdiction to hear any such claim under Saudi labor law.

To support its argument, the defendant cites cases in which United States courts have complied with United States statutory requirements which allocate jurisdiction to hear certain matters to specified courts. Courts not so specified have no subject matter jurisdiction to hear substantive matters regarding these statutes. *See Denberg v. United States R.R. Retirement Bd.,* 696 F.2d 1193, 1196 (7th Cir.1983), *cert. den.,* 466 U.S. 926, 104 S.Ct. 1706, 80 L.Ed.2d 180 (1984); *Assure Competitive*

*Transp., Inc. v. United States,* 629 F.2d 467, 471 (7th Cir.1980), *cert. den.,* 449 U.S. 1124, 101 S.Ct. 941, 67 L.Ed.2d 110 (1981); *Pleasant Broadcasting Co. v. Federal Communications Comm'n,* 564 F.2d 496, 500–01 (D.C.Cir.1977). By analogy, the defendant argues that United States courts have no subject matter jurisdiction over Saudi labor law provisions, which similarly vest jurisdiction to hear matters regarding those provisions in Saudi labor commissions.

The reasoning in recent cases clarifies that this analogy is not generally applied to this type of case. *See Randall v. Arabian Am. Oil Co.,* 778 F.2d 1146 (5th Cir.1985); *Curtis v. Harry Winston, Inc.,* 653 F.Supp. 1504 (S.D.N.Y.1987). In *Randall,* the plaintiff sued his former employer under Saudi labor law for wrongful discharge from employment in Saudi Arabia. *See Randall,* 778 F.2d at 1147. The defendant in *Randall* moved for summary judgment due to the Saudi labor commissions' exclusive jurisdiction, just as in the case at hand. *Id.* at 1149. In granting judgment for the defendant, the United States District Court gave effect to the Saudi labor law's exclusive jurisdiction. The court ruled that the only forum for the plaintiff under the Saudi labor law was the Saudi labor commissions. *Id.*

On appeal, the Fifth Circuit distilled the issue of exclusive jurisdiction into whether the district court had subject matter jurisdiction over the dispute, and if so, which law applied under conflicts of laws principles. *Id.* at 1149–50. The court recognized that the district court had subject matter jurisdiction due to the parties' diversity of citizenship and the amount in dispute over $10,000. *Id.* at 1150. The power for federal courts to hear cases and controversies derives from the Constitution and United States law. While they may choose to recognize laws of foreign nations, our courts are not limited by foreign sovereign law short of treaties or other formal agreements, even in matters regarding rights provided by foreign sovereigns. *Id.*

Having found subject matter jurisdiction, the court next addressed the issue of which

law to apply, according to conflicts of laws principles. The *Randall* court applied the most significant relationship test adopted by the forum state of Texas. Accordingly, the court found that Saudi Arabian law applied as the rule of decision, since the plaintiff's home and employment with the defendant for the most part were in Saudia Arabia. *Id.* at 1150–51. The court analyzed the exclusive jurisdiction issue again, not regarding jurisdiction, but regarding whether it necessarily accompanied the rights provided in Saudi labor law. *Id.* at 1151.

■ Even though the Full Faith and Credit Clause does not require federal courts to recognize foreign nations' jurisdictional provisions, the court analyzed interpretations of the Clause to use as an analogy. *Id.* at 1151–53. This analysis revealed that the Full Faith and Credit Clause does not necessarily bind one state to another state's exclusive jurisdiction provisions, reinforcing the conclusion that foreign exclusive jurisdiction provisions do not bind federal courts. *Id.* at 1151–53. *Cf. e.g., Thomas v. Washington Gas Light Co.*, 448 U.S. 261, 285, 100 S.Ct. 2647, 2663, 65 L.Ed.2d 757 (1980). Even the Act of State Doctrine, which functions somewhat as a parallel to the Full Faith and Credit Clause at the international level, is not violated by a federal court's refusal to apply a foreign exclusive jurisdiction provision. *Randall v. Arabian Am. Oil Co.*, 778 F.2d at 1153.

■ In the *Thomas* case, plaintiff Thomas had been injured in Virginia while working for the Washington Gas Light Company ("Company"). *Thomas v. Washington Gas Light Co.*, 448 U.S. at 264, 100 S.Ct. at 2652. Subsequently, Thomas secured workmen's compensation benefits under Virginia law which "excluded any other recovery 'at common law or otherwise' on account of injuries in Virginia...." *Id.* at 264–65, 100 S.Ct. at 2652. A few years later, Thomas attempted to secure additional benefits for the same accidental injury in the District of Columbia where he had lived, had been hired, and had worked for most of his employment with the Company.

*Id.* at 264–65, 100 S.Ct. at 2652–53. The Company opposed this claim, primarily because the Full Faith and Credit Clause bound the District of Columbia to respect the Virginia award as Thomas' exclusive remedy. *Id.* at 265, 100 S.Ct. at 2652. The Supreme Court upheld Thomas' successive benefits under the District of Columbia law, however, despite the Virginia law's recital of exclusive jurisdiction. *Id.* at 286, 100 S.Ct. at 2663. The Court reasoned that the Full Faith and Credit Clause should not be applied in a way to override a state's legitimate interest in protecting its workers. *Id.* at 285, 100 S.Ct. at 2663. Following the reasoning and principles of *Randall* and *Thomas*, therefore, the Saudi labor law exclusivity provisions do not bar this Court's jurisdiction to hear a matter based upon Saudi labor law benefits.

■ The defendant's second claim is that under Virginia's choice of law rules, New York law applies rather than Saudi Arabian law. In determining which law to apply, this Court is bound to apply the forum state's choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). As the defendant pointed out, Virginia would apply the law of the place where the contract was made in determining its nature, validity and interpretation, unless the resulting law contravened the parties' express intentions. *Crosson v. Conlee*, 745 F.2d 896, 902 (4th Cir.1984), *cert. den.*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985). The defendant further pointed out that the last act to make the contract valid was the plaintiff's signature in New York, and thus New York law applies. *See Brand Distrib., Inc. v. Ins. Co. of North America*, 400 F.Supp. 1085, 1089 (E.D.Va. 1974), *rev'd on other grounds*, 532 F.2d 352 (4th Cir.1976).

A recent case not cited by either party, which cites *Randall* with approval, indicates the analysis this Court should use to determine and apply New York law. *See Curtis v. Harry Winston, Inc.*, 653 F.Supp. 1504 (S.D.N.Y.1987) (citing *Randall v. Arabian Am. Oil Co.*, 778 F.2d 1146 (5th Cir.1985)). In *Curtis*, the plain-

tiff worked in Venezuela for a New York corporation over a period of almost twelve years. *Id.* at 1506. He claimed the defendant denied him vacation bonuses to which he was entitled under Venezuelan law. *Id.* The defendant moved to dismiss on several grounds, including the allegation that according to New York law, the court should apply New York law and should not enforce the labor law of Venezuela. *Id.* The court recognized that the law is unsettled in the area of applying foreign labor laws in a federal court, and found the *Randall* case to be the most analogous to the situation. *Id.* at 1507.

The court pointed out differences in the two situations, though, especially that in *Randall*, the parties apparently had agreed that Saudi Arabian law applied, whereas in *Curtis*, the parties vigorously contested whether Venezuelan law applied. *Id.* at 1508. Furthermore, the *Randall* court indicated that the defendant had interfered with the plaintiff's attempts to pursue his claims in the foreign legal system. The *Curtis* court evidently found it insignificant that the plaintiff had not pursued his claim in Venezuela, even though the allegations were that the misconduct continued over a period of twelve years in Venezuela. *Id.* at 1506–07, 1507 n. 3. These factual differences did not prevent the *Curtis* court from finding subject matter jurisdiction over the foreign law issue due to diversity of citizenship and a sufficient amount in controversy, as in *Randall*. *Id.* at 1508.

Once beyond the threshold of jurisdiction, the court analyzed the status of New York law regarding the enforcement of foreign law. *Id.* New York law requires application of international comity unless to do so would uphold a result "inherently vicious, wicked, or immoral, and shocking to the prevailing moral sense." *Id.* (quoting *Int'l Hotels Corp. v. Golden*, 15 N.Y.2d 9, 254 N.Y.S.2d 527, 529, 203 N.E.2d 210, 211 (Ct.App.1964) (cited in *Drexel Burnham Lambert Group, Inc. v. Galadari*, 610 F.Supp. 114, 119 (S.D.N.Y.1985), *aff'd in part, vacated and remanded in part*, 777 F.2d 877 (2d Cir.1985)). The defendant had argued that the Venezuelan labor law should not apply because it was repugnant to the public policy of New York. *Id.* The Venezuelan labor law did provide greater benefits than New York law. *Id.* The court reasoned, however, that this was no reason not to apply Venezuelan law. *Id.* Accordingly, the court held that it should apply Venezuelan law "[o]n the basis of the principles enunciated in *Randall* as well as the principles of international comity and fairness." *Id.* at 1508–09.

[5] In the case at hand, just as in *Curtis*, the defendant argues that New York law applies to the exclusion of the foreign law, and that New York law provides the plaintiff no remedy for his overtime claim. Ruling against the defendants, however, the *Curtis* court held that under New York law, the Saudi labor law should apply unless it requires a reprehensible result. The plaintiff's greater benefit under Saudi labor law than under New York's law is not a reprehensible result.

Furthermore, this result is consistent with the Virginia conflicts of law rule that the law of place of the contract's making governs in absence of agreement otherwise. *Crossen v. Conlee*, 745 F.2d at 902. The written contract between the parties expressly stated that the plaintiff's compensation was "in accordance with Saudi labor law." Virginia's choice of law rules require this Court to enforce the Saudi labor law, whether by express agreement of the parties or by application of New York law.

[6, 7] The defendant further argues that Count Three is barred by the statute of limitations, whether the Court applies Saudi labor law directly or by way of Virginia law which borrows the foreign statute. Article 13, Saudi labor law requires in pertinent part that:

> No complaint shall be heard by any Commission in respect of violations of the provisions of this Law or of the rules, decisions or orders issued in accordance therewith, after the lapse of twelve months from the date of the occurrence of such violation. No case or claim relating to any of the rights provided for in this Law shall be heard after the lapse of

twelve months from the date of termination of the contract.

Saudi Arabian Labor and Workmen Law, Article 13. In respect for foreign law, Virginia law bars claims on contracts governed by foreign law if that foreign law would bar the claims. Va.Code § 8.01–247 (1984). *See also* N.Y.Civ.Prac.L. & R. § 202 (cause of action which accrued in foreign jurisdiction would be barred in New York if it would be barred under the foreign statute of limitations; *Knieriemen v. Bache Halsey Stuart Shields, Inc.,* 74 A.D.2d 290, 427 N.Y.S.2d 10 (1980)). Since the plaintiff filed Count Three on July 27, 1987, well over a year after both the termination of his contract on March 26, 1986 and any violations of Saudi labor law, the defendant maintains that the one-year statute of limitations should bar Count Three.

Moreover, the defendant contends that the Court's permission for the plaintiff to amend his complaint by adding Count Three did not include allowance for the amendment to relate back to the date of the original complaint's filing on January 16, 1987. In support of its contention, the defendant alleges that the amendment constitutes a new cause of action of which the defendant had no notice and by which it was prejudiced. Thus, the defendant contends, Count Three should not relate back to the original filing date. The alleged prejudice suffered included five months of trial preparation, a deposed witness no longer available for supplemental questioning and the Court's prior decision on a summary judgment motion with no awareness of Saudi Arabian issues.

The defendant evidently failed to raise any issues of prejudice when contesting the plaintiff's motion to amend his complaint. Moreover, these allegations do not amount to the "specifically resulting prejudice" to warrant denying the amendment. *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.), *cert. dism'd,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980). The defendant was on notice of conduct, transactions and occurrences of Count Three since they arose out of those of the original pleadings. Additionally, the defendant was on notice of the legal basis for Count Three as evidenced by the defendant's contract with the plaintiff in which plaintiff's compensation was stated in the agreement to be "in accordance with Saudi labor law." Furthermore, the defendant as plaintiff's employer was to "know all the contents of the [Saudi Arabian] labor law so that each shall know where he stands and be aware of his rights and obligations." Saudi Arabian Labor and Workmen Law, Article 9.

As the *Davis* court carefully delineated according to the rules' wording, the issue of prejudice goes to the grant of leave to amend. *Davis v. Piper Aircraft Corp.,* 615 F.2d 606, 613 (4th Cir.), *cert. dism'd,* 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Once leave to amend is warranted, the question of whether the amendment relates back to the original filing date is a question of whether the allegations in the amended complaint arise out of occurrences originally pled. *Id.* at 614. This test ensures that "the defendant knew of the action's commencement and of its nature in time to avoid any prejudice to his defense on the merits." *Id.* (citations omitted).

In the case at hand, Count Three merely specifies an alternative avenue of recovery which arises out of the same occurrences originally pled. The claim is based on the contract of employment which is before the Court. The contract terms provided that it was "in accordance with Saudi labor law." Since the amendment arises out of the contract originally pled, the defendant was on notice of the possibility of an amendment "in accordance with Saudi labor law" such as in Count Three, precluding any prejudice due to the amendment. *See Grattan v. Burnett,* 710 F.2d 160, 163 (4th Cir.1983), *aff'd,* 468 U.S. 42, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). Therefore, the amended complaint relates back to the original complaint's filing date. *See id.; see also Smith v. Town of Clarkton, N.C.,* 682 F.2d 1055, 1059–60 (4th Cir.1982).

■ Accordingly, the statute of limitations does not bar Count Three, because its deemed filing date of January 16, 1987 is

within a year of the date which would have started the statute to run. This is so whether the statute would begin to run on the contract's stated date of termination, or the last date of the payment of an overtime violation, or the plaintiff's November 21, 1986 departure from the company.

However, a plain reading of the Saudi statute does limit the extent of the plaintiff's complaint. Article 13 of the Saudi labor law requires not only that the complaint be brought within twelve months after the contract's termination, but clearly provides that: "No complaint shall be heard by any commission in respect of violations of the provisions of this law ... after the lapse of twelve months from the date of the occurrence of such violations." Saudi Arabian Labor and Workmen Law, Article 13. Therefore, the Commission in Saudi Arabia could not consider a violation occurring more than twelve months prior to filing. Substituting this Court for the Commission cannot be cause for ignoring the plain wording of the statute of limitations of Saudi Arabia. After considering the affidavits, periodicals and treatises, this Court applies this plain interpretation of Saudi Arabian law.

Since the original complaint was filed on January 16, 1987, the statute of limitations bars recovery for any violation of the duty to pay overtime occurring before January 16, 1986. The employer had a duty to pay overtime on all hours in excess of forty-eight per week. The failure to do so was a violation of that duty. The occurrences of this violation took place each time the plaintiff was not paid according to the defendant's duty to compensate overtime work. The plaintiff's Count Three recovery is limited to the overtime not appropriately compensated in payments made to him on or after January 16, 1986. This result in no way indicates a limitation on any contractual recovery which the plaintiff may have under Count Two.

In light of this reasoning, the Court DENIES the defendant's Motion to Dismiss or alternatively, for Summary Judgment. The exclusive jurisdiction provision in the Saudi Arabian labor law does not preclude this Court's jurisdiction over the subject matter of Count Three. Furthermore, New York law does not as a matter of law preclude defendant's recovery under Count Three. Finally, the statute of limitations does not wholly bar Count Three of the plaintiff's complaint, but a portion thereof.

In his motion, the plaintiff requested the Court to enter judgment by default due to the defendant's tardy response to the plaintiff's amended complaint. The federal rules provide that a party may respond within ten days after service of the amended pleading, unless the court orders otherwise, and that failure to respond timely warrants default. Fed.R.Civ.Proc. 15(a), 55(a). The plaintiff contends that since the defendant's response was filed after ten days after service of the amended pleading, this Court should enter default judgment in the plaintiff's favor. The defendant was allowed to file its untimely response by court order, however, and thus complies with the filing requirements. Therefore, this Court denies the plaintiff's motion for default judgment.

The plaintiff also requested summary judgment in his favor, contending that no genuine issues of material fact remain in the case. The defendant has contested the plaintiff's position and has set forth under affidavit contested issues regarding the nature and amount of damages owed the plaintiff, if any. Since it appears that genuine issues of material fact may remain in the case, plaintiff's motion for summary judgment cannot be granted, at this time.

IT IS SO ORDERED.