**MAJORICA, S.A. and Majorica Jewelry, Ltd., Plaintiffs,**

v.

**MAJORCA INTERNATIONAL, LTD., Majorca World Wide, Ltd., Gail S. Shaffer, Secretary of State of the State of New York and Perlas Mallorca, S.A., Defendants.**

**No. 86 Civ. 8965 (RWS).**

United States District Court, S.D. New York.

May 26, 1988.

---

---

Stein, Davidoff & Malto, New York City (Jack E. Bronston, of counsel), Cobrin & Godsberg, New York City (Peter Cobrin, Abby Avroch Ross, of counsel), for plaintiffs.

Kirschstein, Kirschstein, Ottinger & Israel, P.C., New York City (Martin W. Schiffmiller, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Plaintiffs Majorica, S.A. and Majorica Jewelry, Ltd. (together, "Majorica") have moved pursuant to Fed.R.Civ.P. 15(a) for leave to file a third amended complaint, pursuant to Fed.R.Civ.P. 12(f) for an order striking defendants' Second, Third, Fourth, Fifth and Sixth affirmative defenses, and pursuant to Fed.R.Civ.P. 42(b) for severance of defendants' counterclaims. Defendants Majorca World Wide, Ltd. ("Majorca World Wide") and Perlas Mallorca, S.A. ("Perlas Mallorca") oppose the motions to strike and to sever and the motion to amend only with respect to the proposed Third and Fourth Causes of Action. For the reasons set forth below, the motions are denied.

*Background*

This action arises under the Federal Trademark Act or Lanham Act, 15 U.S.C. §§ 1051–1127. Majorica, S.A. is a Spanish corporation with a principal place of business in Spain. Majorica Jewelry, Ltd. is a New York corporation with a principal place of business in New York. Majorica S.A. sells high quality imitation pearls through its United States distributor, Majorica Jewelry, Ltd., under the trademark "Majorica" which is registered in the United States and more than seventy countries.

Perlas Mallorca is a Spanish corporation with a principal place of business in Spain. Majorca World Wide is a New York corporation with a principal place of business in New York. In its Complaint, Majorica alleges that Majorca World Wide and Perlas Mallorca are infringing its trademark rights by selling in the United States imitation pearls under the trademarks "Majorca" and "Mallorca." Majorica has asserted federal claims against defendants under 15 U.S.C. §§ 1114(1), 1124, and 1125 for trademark infringement and false designation of origin, description or representation. Majorica has also asserted claims based on New York statutory and common law for unfair competition and unfair trade practices.

In the proposed third amended complaint, Majorica seeks to add two additional claims based on defendants' alleged use of a "collective" trademark that is illegal under Spanish law and that constitutes a false description, representation, or designation of origin in violation of 15 U.S.C. § 1125.[1]

*The Motion to Amend the Complaint*

Although Fed.R.Civ.P. 15(a) requires that leave to amend a complaint be freely given when justice so requires, courts have followed the Supreme Court's decision in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) in denying leave to amend when the proposed amended pleading is without legal merit and subject to dismissal under Fed.R.Civ.P. 12(b)(6). *See Eria v. Texas Eastern Transmission Corp.*, 377 F.Supp. 344, 345 (E.D. N.Y.1974); *Horwitt v. Movado Watch Agency, Inc.*, 62 F.R.D. 5 (S.D.N.Y.1974);

---

1. Majorica has also moved for leave to amend the Complaint by (a) eliminating Majorca International, Ltd. and Gail S. Shaffer as defendants and those portions of the Complaint that refer to said defendants, (b) eliminating two causes of action relating to trademarks that were in contention only as to Majorca International, Ltd., and (c) clarifying certain language in the Complaint. Defendants do not oppose these amendments, and they are, therefore, permitted.

*see also* 3 *Moore's Federal Practice,* ¶ 15.08(4), pp. 15–80 to 15–81 (2d ed. 1985). Here, Majorica's proposed Third and Fourth Causes of Action do not state claims for which relief can be granted.

Majorica's proposed Third Cause of Action alleges that defendants' are using such terms as "Majorca Pearls" or "Pearls of Majorca" as "collective trademarks" in order to convey the impression to purchasers that simulated pearls manufactured on the Island of Majorca possess particular qualities endemic to that geographical area. Majorica contends that the use of such a collective mark violates Articles 136 through 143 of the Spanish Law of Industrial Property regarding the proper use of collective marks. Invoking the Paris Convention for the Protection of Industrial Property (the "Paris Treaty"), 21 U.S.T. 1629, and section 44 of the Lanham Act, 15 U.S.C. § 1126, Majorica asks this court to recognize a cause of action alleging violations of Spanish law based on acts committed in the United States.

■ It is not necessary to reach the issues of whether Majorica has properly alleged facts sufficient to support a claim that defendants have violated Spanish law, for under the law of this Circuit the trademark laws of a foreign country have no extraterritorial effect and cannot be asserted to support federal claims in a United States district court. In the leading case of *Vanity Fair Mills v. T. Eaton Co.,* 234 F.2d 633 (2d Cir.), *cert. denied,* 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956), our Circuit rejected a claim that the Paris Treaty creates private rights of action under each member country's law for acts of unfair competition occurring in foreign countries. There the plaintiff American manufacturer sought to bring a claim in the district court for infringement of an American trademark and unfair competition as a result of sales by a Canadian company in Canada. Discussing the extraterritoriality of trademark laws, the Court described the purposes and effect of the Paris Treaty as follows:

> The [Paris Treaty] is essentially a compact between the various member countries to accord in their own countries to citizens of the other contracting parties trade-mark and other rights comparable to those accorded their own citizens by their domestic law. The underlying principle is that foreign nationals should be given the same treatment in each of the member countries as that country makes available to its own citizens....
>
> The [Paris Treaty] is not premised upon the idea that the trade-mark and related laws of each member nation shall be given extraterritorial application, but on exactly the converse principle that each nation's law shall have only territorial application. Thus a foreign national of a member nation using his trademark in commerce in the United States is accorded extensive protection here against infringement and other types of unfair competition by virtue of United States membership in the [Treaty]. *But that protection has its source in, and is subject to the limitations of, American law, not the law of the foreign national's own country.*

*Vanity Fair,* 234 F.2d at 640–41 (emphasis added).

■ Majorica's attempts to limit or distinguish the holding in *Vanity Fair* is unavailing. Although the Paris Treaty was amended in 1967 to include a provision that defines a general category of misrepresentations that would constitute unfair competition against which nationals of member countries should be protected,[2] that amendment does not disturb the *Vanity Fair* court's conclusion that the Paris Treaty requires only that foreign nationals be given the same protection under the trademark and unfair competition laws of each contracting state as that accorded domestic citizens. Courts that have followed *Vanity Fair*'s interpretation of the Paris Treaty's effect on the extraterritorial application of

**2.** Article 10–bis, subparagraph 3 of the Paris Treaty provides: "The following in particular shall be prohibited: ... indications or allegations the use of which in the course of trade is liable to mislead the public as to the nature, the manufacturing process, the characteristics, the suitability for their purpose, or the quantity, of the goods."

national trademark laws since 1967 have not reached a different result. *See John LeCroy & Sons, Inc. v. Langis Foods, Ltd.*, 376 F.Supp. 962, 965 (D.D.C.1974), *reversed on other grounds*, 539 F.2d 196 (D.C.Cir.1976); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 358 F.Supp. 1065, 1076 (D.Nev.1973), *vacated on other grounds*, 556 F.2d 406 (9th Cir.1977). Moreover, the Lanham Act, through its trademark infringement and false designation of origin provisions, provides precisely the type of protection that is recommended in the 1967 amendment. In sum, there is nothing in the Paris Treaty that suggests a foreign national should be able to invoke its domestic law when suing in a United States court for relief from acts committed in the United States.

Majorica has cited no case that supports the proposition that the trademark and unfair competition law of a foreign country can be applied to acts committed in the United States. In *Maison Lazard et Compagnie v. Manfra, Tordella & Brooks, Inc.*, 585 F.Supp. 1286 (S.D.N.Y.1984), cited by Majorica, the Honorable Whitman Knapp invoked the Paris Treaty to uphold the French plaintiff's claim of federal unfair competition. In so holding, Judge Knapp followed the Ninth Circuit's decision in *Toho Co. Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir.1981), in which the Court held that citizens of foreign nations with which the United States has trademark, trade name or unfair competition treaties, can assert a federal claim for relief from unfair competition by use of appropriate trademark remedies. The Ninth Circuit grounded its holding in subsection 44(h) of the Lanham Act which provides that such foreign nationals "shall be entitled to effective protection against unfair competition, and the remedies provided in this chapter for infringement of marks shall be available so far as they may be appropriate in repressing acts of unfair competition." 15 U.S.C. § 1126(h). Summarizing the federal claims available to the foreign plaintiff in *Toho Co. v. Sears, Roebuck & Co.*, the Court stated:

> Domestic companies are entitled to federal protection against trademark infringement, 15 U.S.C. § 1114 (1976), and passing off, 15 U.S.C. § 1125(a) (1976). They are also entitled to the protection accorded them by any applicable state law of unfair competition. Subsection 44(h) requires only that [the foreign plaintiff] be granted these same protections because it extends only so far as is necessary to give effect to the treaty.[3] Thus, the practical effect of section 44 and this treaty is to provide a federal forum in which [the foreign plaintiff] can pursue its state claims.

*Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d at 793. Thus, while *Maison Lazard* and *Toho* stand for the proposition that a foreign plaintiff may invoke the Paris Treaty together with the Lanham Act to assert a federal claim of unfair competition, the decisions do not suggest that courts may apply the substantive law of a foreign country to acts committed in the United States.

Majorica also asserts that notions of comity and certain principles of conflict of laws would permit this court to recognize a cause of action based on Spanish law for acts committed in the United States. Comity, however, is a doctrine relating to the discretionary degree of recognition that one nation or jurisdiction accords to the judicial or legislative acts of another nation or jurisdiction. *See Sumitomo Corp. v. Parakopi Compania Maritima*, 477 F.Supp. 737 (S.D.N.Y.1979) (citing *Hilton v. Guyot*, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895)), *aff'd mem.*, 620 F.2d 286 (2d Cir.1980). Here, as in *Sumitomo*, "no legislative, executive or judicial act of another nation is involved." *Sumitomo Corp. v. Parakopi Compania Maritima*, 477 F.Supp. at 742. Although Majorica has cited to Spanish law, it has not cited any legislative or judicial act of any Spanish agency or court stating a policy, or

---

**3.** In *Toho Co. v. Sears, Roebuck & Co.*, the foreign plaintiff invoked the Treaty of Friendship, Commerce and Navigation between the United States and Japan, 4 U.S.T. 2063, and in *Maison Lazard v. Manfra, Tordella & Brooks, Inc.*, the Paris Treaty.

even a desire, that Spanish law be applied to acts committed in other countries.

■ Similarly, Majorica's contention that New York's conflict of law rules compel the application of Spanish law is unavailing. Majorica has not identified any conflict between United States and Spanish law that must be resolved through choice of law analysis. The acts that gave rise to this case were committed solely within the United States; a conflicts issue does not arise simply because one of the plaintiffs is a Spanish domiciliary. *Curtis v. Harry Winston, Inc.*, 653 F.Supp. 1504 (S.D.N.Y. 1987), cited by Majorica, is not in point. There, subject matter jurisdiction was based solely on diversity jurisdiction,[4] and the substantive claims related to monies owed to the Venezuelan plaintiff for work performed in Venezuela. Following New York's conflict of law rules, the Honorable Vincent L. Broderick held that the plaintiff could assert a claim predicated on Venezuelan labor law since "as to those statutory claims Venezuela has a significant relationship to the matters in controversy." *Curtis v. Harry Winston, Inc.*, 653 F.Supp. at 1506. However, as Judge Broderick emphasized, the issue in *Curtis* was "whether statutes of a given country will be applied to employment in that country by a federal court in a diversity action." *Id.* at 1507. Here, by contrast, jurisdiction is based on federal claims being asserted under the Lanham Act for acts committed in the United States. Neither comity nor conflict of law rules have any bearing on the application of Spanish law to this case.

■ Majorica's proposed Fourth Cause of Action alleges that defendants' use of such expressions as "Majorca Pearls" and "Pearls of Mallorca," states or implies "that simulated pearls sold by them are sold under a valid collective mark with respect to simulated pearls which defendants have caused to enter into commerce [and] constitutes a false description or representation and/or a false designation of origin pursuant to 15 U.S.C. § 1125." To the extent that this claim alleges that defendants' use of such designations constitutes a false description or false representation with the meaning of 15 U.S.C. § 1125, it merely repeats a claim already adequately asserted in the Second Cause of Action. However, to the extent that this claim alleges that defendants' use of those designations constitutes the separate wrong of implying that there exists a valid "collective mark," which does not in reality exist, it fails to state a claim for which relief can be granted.

■ The Lanham Act defines a "collective mark" as "a trademark or service mark used by the members of a cooperative, an association or other collective group or organization and includes marks used to indicate membership in a union, an association or other organization." 15 U.S. C. § 1127. Under the Lanham Act, an injured party may sue for the infringement of a legally adopted collective mark. *See, e.g., International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912 (9th Cir.1980), *cert. denied*, 452 U.S. 941, 101 S.Ct. 3086, 69 L.Ed.2d 956 (1981); *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790 (6th Cir.1957); *Better Business Bureau of Metropolitan Houston, Inc. v. Medical Directors, Inc.*, 509 F.Supp. 811 (S.D.Tex. 1981). However, a party cannot base a claim on a "hypothetical" or "non-existent" collective mark, since a mark that has not actually been adopted and used by an organization is not a collective mark under federal law. Majorica has cited to no case in which a court has permitted a claim resembling the proposed Fourth Cause of Action to go forward. Therefore, the request to add the proposed fourth claim is denied.

### The Motion to Strike Defendants' Affirmative Defenses

Majorica has moved to strike all but one of defendants' affirmative defenses citing the Supreme Court's decision in *Park 'N Fly v. Dollar Park and Fly*, 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985). In

---

**4.** Diversity is not present in this case because the plaintiffs are Spanish and New York corporations, respectively, as are the defendants.

*Park 'N Fly,* the Supreme Court held that a litigant could not contest the validity of an incontestable trademark or the owner's exclusive right to use the mark other than through the assertion of one of even expressly enumerated defenses in 15 U.S.C. § 1115(b). *Park 'N Fly,* 469 U.S. at 194, 105 S.Ct. at 661. Defendants concede that five of their affirmative defenses are not listed in 15 U.S.C. § 1115(b). However, defendants argue that *Park 'N Fly* does not prevent them from asserting those defenses to challenge the strength and hence the scope of protection of an incontestable mark. Moreover, they argue, *Park 'N Fly* does not relieve the trademark owner of the necessity of proving likelihood of confusion and infringement.

The cases support defendants' contentions. *See, e.g., Oreck Corp. v. U.S. Floor Systems, Inc.,* 803 F.2d 166 (5th Cir.1986); *Source Services Corp. v. Source Telecomputing Corp.,* 635 F.Supp. 600 (N.D.Ill. 1986). In *Source Services Corp.,* the court distinguished the conclusive presumption of validity and exclusive right to use attaching to an incontestable mark under *Park 'N Fly* from the question of the strength of the mark, stating:

> These conclusive presumptions, however, do not prove the strength of plaintiff's incontestable marks. Even if this Court found that plaintiff's marks are descriptive, ... the conclusive presumption that the marks have a secondary meaning established by the statutory incontestability of plaintiff's [marks] does not automatically transfer into a conclusive presumption of strength in a likelihood of confusion analysis.

*Source Services Corp.,* 635 F.Supp. at 610. The Fifth Circuit reached a similar conclusion in *Oreck Corp. v. U.S. Floor Systems, Inc.,* rejecting an argument that *Park 'N Fly* precludes attacks on the strength or scope of protection of an incontestable mark:

> Oreck maintains that U.S. Floor may not attack the mark on grounds of descriptiveness, given the mark's incontestable status and the Supreme Court's holding in [*Park 'N Fly*]. *Park 'N Fly* merely held, however, that an infringe-ment action brought by the holder of an incontestable mark may not be defended on the ground that the mark is merely descriptive and therefore invalid.... U.S. Floor's argument was not that Oreck's mark was invalid, but that it was not *infringed* because there was no confusion. *Park 'N Fly* says nothing to preclude this argument. Incontestable status does not make a weak mark strong.

*Oreck Corp.,* 803 F.2d at 171.

■ Defendants' Second, Third and Sixth affirmative defenses raise issues of fact and law bearing on the strength and scope of protection of Majorica's mark "Majorica." Such issues concern whether rights in "Majorica" can be asserted against the use of the geographical terms "Majorca" or "Mallorca," whether consumers and the trade recognize the designations "Majorica" or "Mallorca" as indications of a single source of pearls from, or as merely identifying imitation pearls originating from, the Island of Majorca, and whether Majorica's reputation is denied by defendants' sale of products with the indication that they originate from Majorca because of the alleged inferior quality of defendants' products. Each of these issues is relevant to whether Majorica's mark is being infringed and whether and to what extent Majorica is being damaged thereby.

■ As one commentator has observed, "[a] motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." 2A *Moore's Federal Practice,* ¶ 12.21[3] at p. 12–179; *accord Durham Indus., Inc. v. North River Ins. Co.,* 482 F.Supp. 910, 913 (S.D.N.Y.1979). As discussed above, defendants' Second, Third and Sixth defenses fairly present questions of law or fact that defendants should not be precluded from raising at this stage of the litigation. Similarly, defendants' Fourth affirmative defense based on laches, acquiescence and estoppel, on which the Supreme Court expressly declined to rule, *see Park 'N Fly,* 469 U.S. at 203 n. 7, 105

S.Ct. at 666 n. 7, presents a valid question of law, *see Citibank, N.A. v. Citytrust*, 644 F.Supp. 1011, 1013 (E.D.N.Y.1986), as does defendants' Fifth affirmative defense asserting "unclean hands" on the part of Majorica. *Cf. United States Jaycees v. Cedar Rapids Jaycees*, 794 F.2d 379, 382–83 (8th Cir.1986). Therefore, the motion to strike defendants' affirmative defenses is denied.

*The Motion to Sever Defendants' Counterclaims*

■ The parties to this case have already agree to try the issues of liability and damages separately. Majorica now requests that defendants' two counterclaims be severed and also tried separately. However, Majorica has made no showing that a severance is needed to avoid prejudice, undue delay or inconvenience, *see Rush v. Oppenheimer & Co.*, 650 F.Supp. 682 (S.D. N.Y.1986), and the court cannot see how severance could possibly serve the interests of convenience and economy for the parties, the witnesses or the court itself. The motion for severance is denied.

For the reasons set forth above, Majorica's motions to add the proposed Third and Fourth Causes of Action to the Complaint, to strike defendants' affirmative defenses and to sever defendants' counterclaims are denied.

IT IS SO ORDERED.